LOWERY v. SCHOOL TRUSTEES.

(Filed November 22, 1905).

*Legislature — Statutes — Constitutional Law — Graded Schools — Equal Facilities for Both Races — Separate Buildings — Public School System, Its Administration.*

1. Every presumption is in favor of the validity of an act of the Legislature and all doubts are resolved in support of the act.

2. Courts never assume that the Legislature intended to pass an unconstitutional act—they may resort to an implication to sustain an act, but not to destroy it.

3. The act establishing a graded school in the town of Kernersville, is construed to contain a positive direction to establish one school in which the children of each race are to be taught in separate buildings and by separate teachers, as the Constitution commands.

4. When a duty is imposed and power conferred upon a public agency, by necessary implication, the duty and power to do the thing in the manner directed by the Constitution, attach.

5. The school district prescribed by the Act of 1905, (Pri.) chap. 11, must include both races, and the taxes levied and collected upon the property and polls of both races in the district must be applied to the support and maintenance of a graded school for the children of both races, and in carrying out the provisions of the act, the imperative mandate of the Constitution, that there shall be no discrimination in favor of, or to the prejudice of, either race must be observed.

6. If the general scope and purpose of a statute are constitutional, and constitutional means are provided for executing such general purposes, the entire statute will not be declared void, because some one or more of the details prescribed, or minor provisions incorporated, are not in accordance with the Constitution, provided such invalid parts may be eliminated without destroying or materially affecting the general purpose.

7. So much of section 7, of the Act of 1905, (Pri.) chap. 11, as undertakes to distinguish between the races in regard to the money apportioned from the public school fund is invalid. This, however, does not affect the other portions of the act.

140——3

8. The defendants have no right to take the school building now provided for the colored children and use it for the whites.

9. In executing the law, the defendants shall not discriminate against either race, but shall afford to each equal facilities. It is not intended by this that the taxes are to be apportioned between the races *per capita*, but that the school term shall be of the same length during the school year, and that a sufficient number of competent teachers shall be employed at such prices as the board may deem proper. Dictum in *Hooker v. Greenville*, 130 N. C., 473, disapproved.

10. If the defendant board or its successor shall refuse to establish and maintain the school upon a constitutional basis and in accordance with the constitutional provisions, the courts have power, by the writ of *mandamus*, to compel them to do so.

11. The two essential principles underlying the establishment and maintenance of the public school system of this State are: First, the two races must be taught in separate schools, and second, there must be no discrimination for or against either race. Keeping them in view, the matter of administration is left to the Legislature and the various officers, boards, etc., appointed for that purpose.

ACTION by W. A. Lowery and others against Board of Graded School Trustees of the Town of Kernersville and others, heard by *Judge Henry R. Bryan,* at the September Term, 1905, of the Superior Court of FORSYTH.

At the session of 1905 of the General Assembly, an act was passed and ratified entitled "An act to establish a graded school in the town of Kernersville, Forsyth County, North Carolina." The portions of said act material to be noticed in the discussion of the exceptions by plaintiffs to the judgment appealed from are: Section 1. The town of Kernersville is made a public school district to be called the Kernersville Graded School District. Section 2. Provides for the election of a board of trustees consisting of five members. Section 3. Directs the organization of the board and the election of proper officers. Section 4. That the trustees shall have exclusive control of the public school interests,

funds and property in the graded school district; shall pro-
vide rules for their government not inconsistent with law,
fix the compensation of teachers, etc., shall make an accu-
rate census of the school population of said district, as re-
quired by law, etc.; that all children residents in said dis-
trict, between the ages of 6 and 21, shall be admitted to the
school free of tuition charges.    Section 5 directs the levy-
ing a special tax, etc., provided that the question be first
submitted to the qualified voters of said district, at the muni-
cipal election in May, 1905.    It is also provided that at the
same time the proposition be submitted to the voters to issue
coupon bonds not to exceed the sum of $4,000, to be used in
the erection of a suitable school building in said school dis-
trict.    Section 7. That the moneys which shall, from time
to time, be apportioned under the general school law of the
State to the said school district be turned over by the treas-
urer of Forsyth County to the treasurer of the said school
trustees for the benefit of said school; provided, that, in ap-
portioning the school fund of said county, said graded school
shall be allowed the proportion of said fund *per capita* to the
white children of school age.    Section 8. That the property,
both real and personal, of the public school for white chil-
dren shall become the property of said graded school and shall
be vested in the said board of trustees, and their successors
in trust, for the said graded school and the said trustees may,
in their discretion, sell the same or any part thereof and apply
the proceeds to the use of the public graded schools, to be
established in said school district of Kernersville.    Section 9
provides for issuing the bonds, etc., if approved by voters.
Plaintiffs allege that, pursuant to the provisions of said act,
an election was held in the prescribed territory, on first Tues-
day in May, 1905, and that a majority of sixteen of the
voters of said district cast their votes in favor of levying the
tax and issuing the bonds provided for by the act.    That
only nine days' notice of said election was given, whereby

some electors who would have been against schools, were pre-
vented from voting; that the defendants who were elected
trustees at said election have organized, as provided in said
act, and that the bonds have been prepared and delivered to
them and that they now threaten to sell them, etc.; that the
board of commissioners of the town of Kernersville threaten
to levy a tax upon the property and polls in said district for
the support and maintenance of said schools, etc.; that the
board of education threatens to turn over to defendants the
property of the public school for white children and do all
other acts and things directed by said act in that respect;
that the town of Kernersville has a population of about
1,200, counting both white and colored persons; that the
colored persons in said town own property valued for taxa-
tion at $6,534; that the said act is unconsttitutional and
void, in that it provides for no graded school for colored
children within said district; that it discriminates to the
prejudice of the children of the colored race and gives to the
children of the white race advantage denied to the children
of the colored race; that the election was irregular and un-
lawful, for that only ninety days' notice was given and that it
was held on Tuesday instead of Monday. They demand
that the defendants be enjoined from proceeding with the
issuing of the bonds, etc., or levying the taxes, or doing any
other of the several acts under and by virtue of the said act,
etc. A restraining order was issued, with an order to the
defendants to show cause why a permanent injunction should
not issue, etc. Defendants answered, admitting the provi-
sions of the act, the manner and time of holding the election,
and that they were proceeding to discharge the duties im-
posed upon them by the several sections of the statute. They
deny several immaterial allegations in this respect; they say
they are advised that by the provisions of the act they are
entitled to take charge of the colored school property in the
district, and intend to do so and use it for the purpose of a

graded school for white children in the district, until they can build a school house suitable for school purposes, as provided by the act; that they intend to use the money collected from the white and colored people of the town for the support and maintenance of the white graded school and the colored school, so as to afford equal facilities for the school children of both races, as provided for the public schools in the several counties of the State. They further say that the county board of education have already turned over the property of the public school for white children of the district to the board of school trustees, and have already directed the money, apportioned to the white children of the district, to be turned over to said trustees for the benefit of the white schools under the provisions of the act; that the board of education have also ordered the treasurer of the county to pay to the school committee of the colored public school district, which embraces the town of Kernersville and considerable contiguous territory, the money to be applied to the maintenance of the school in the district, as heretofore, under the school law, which is amply sufficient to maintain the school for a period of not less than four and a half months, on conditions heretofore existing; that the public school district for colored people has in no way been changed or interfered with by these defendants, but they believe the money should have been turned over to the graded school trustees for said purposes, as well as the colored school property. The colored school children within school age in the district number 68, and the white school children within said age number 307—these numbers are ascertained by a census taken by defendant board of trustees; that heretofore there have been in the corporate limits of the town two public school houses used by each race separately. The public school money raised in the county has already been assigned and apportioned to the colored school district without regard to the act establishing the new graded school district. They

further deny that the act discriminates against either race; that it nowhere provides that the tax collected from the colored residents of the town shall be applied exclusively to the support of the white school, nor exclusively to the colored school; nor do the defendants intend, nor have they ever intended, to apply the money arising from the taxes on property or polls of the colored residents exclusively to either race, there being nothing in the act requiring them to do so or forbidding them to apportion to the public school for the colored children sufficient sums of money to afford them equal school facilities with the children of the white race; that the house now used for the colored schools is amply sufficient to accommodate the children of that race. They further say that they are advised that the election was held in accordance with law and was fairly conducted; that the voters of the town knew of the day and attended the election, casting their ballots as they wished, etc. The defendants filed affidavits tending to sustain their answer.

*Judge Bryan,* upon the hearing, found that the election was held substantially as required by the act; that the qualified voters in the town had ample opportunity to register; that the proceeds of the bonds proposed to be issued were to be applied to building a school house for the white children in the district; that the building for white children is insufficient to accommodate them, and the erection of a building for additional accommodations was necessary; that the school building for the colored children was amply sufficient and commodious for said children. Being of opinion that the act provided a graded school district embracing all of the territory within the limits of the town of Kernersville for both races without any unlawful discrimination for or against the children of either race resident therein, the court below held it was not unconstitutional, and vacated the restraining order and refused the injunction.

The plaintiffs appealed.

*Lindsay Patterson* and *T. F. Baldwin* for the plaintiffs.
*Watson, Buxton & Watson* and *Sapp & Hasten* for the defendants.

CONNOR, J., after stating the facts: If we concurred in the construction put upon the act by the learned counsel for the plaintiffs, we should feel compelled to declare it violative of the Constitution. We do not propose to bring into question the decisions made by this court in *Puitt. v. Commissioners,* 94 N. C., 709, and *Riggsbee v. Durham, ibid,* 800. The principle, announced in those cases and uniformly adhered to by this court, is that a law which directs the tax raised from the polls and property of white persons to be devoted to sustaining schools for white children, and that raised from the polls and property of negroes to schools for negro children, is unconstitutional and void. In both of those cases, the language of the statute directing such distribution of the tax collected was clear and explicit. *Smith, C. J.,* says: "The fund is divided by race distinctions depending on the source from which the moneys are derived. This, as the judge decides, is forbidden by the Constitution, and, as the objects in view cannot be accomplished by using the funds as directed, or for any other purpose than the statutory requirements, it clearly ought not to be taken from the tax payers at all, because this is but a means of effecting an illegal law." Conceding that under the explicit language of section 2, Article IX, of the Constitution, there must be no discrimination in favor of, or to the prejudice of, either race, we proceed to ascertain whether there is imposed upon the defendant trustees any duty in respect to the establishment and maintenance of the Kernersville Graded School, provided for by the Act of 1905, inconsistent with this provision.

In discussing the language of the statute, it will be well to keep in view the universally recognized rule of construc-

tion which requires us to read the act in the light of, and with reference to, the Constitution of the State. The principle is well stated in Sutherland on Statutory Construction (2 Ed. Lewis), section 82: "Every presumption is in favor of the validity of an act of the Legislature and all doubts are resolved in support of the act. In determining the constitutionality of an act of the Legislature, courts always presume in the first place that the act is constitutional. They also presume that the Legislature acted with integrity and with an honest purpose to keep within the restrictions and limitations laid down by the Constitution."

*Peckham, J.,* in *People v. Terry,* 108 N. Y., 1, says: "In construing a statute which is susceptible of two constructions, one of which will render it valid and the other void, and both are equally reasonable, it is familiar learning that courts incline to, and will adopt the construction which renders the act valid rather than the one which avoids it." We will never assume that the Legislature intended to pass an unconstitutional act. "The courts may resort to an implication to sustain one act, but not to destroy it." *Atlantic Water Co., v. Const. Water Co.,* 44 N. J. Eq., 427. This rule is quite elementary and finds expression and application in the courts of every American State.

It must be conceded that the act is not so clear as could be desired, nor does it conform in many important respects to the many other acts found in our statutes establishing graded schools. Its defects are to be seen rather in omissions than positive provisions. We notice, first, the several criticisms made by the learned counsel for the plaintiffs. They say that it is manifest that it was never contemplated that there should be a school in the graded school district for the colored race; that only a school for the white race is provided for. We do not attach any importance to the term "graded school." While in other acts, which we have examined, the plural is used, we see no difficulty in finding in the act a posi-

tive direction to establish one school in which the children of each race are to be taught in separate buildings and by separate teachers. The Constitution expressly commands it to be done; this was well known to the draftsman and the Legislature. It will be noted that by section 4, the trustees are required to cause an accurate census of the school population in the district to be taken. It also expressly provides that all children resident in the district within the school age shall be admitted into the school free of tuition. It could not have been contemplated that, in defiance of the express language of the Constitution, all of the children of both races in the district should be admitted into one school building. The fair and only reasonable implication is, that under one board of management, one superintendent, the school should be so arranged and separated as to meet the constitutional requirement in that respect.

We do not suppose that the power of the defendant board to divide the district into as many sections, departments or schools as the convenience or necessity of the children of the district demanded, would be questioned. It is a matter of common observation and knowledge that, in the larger towns of the State, the trustees of the graded or city schools divide it into sections and locate each section or school to meet the convenience of the people, and this is done under the general power to establish a graded school for each race. If the white children are so numerous and the territorial limits of the district so large' that, in the opinion of the board, two school buildings with a separate corps of teachers are necessary, certainly, if within their means, they may establish them under the power to establish a school for white children. The same principle applies to a school for colored children.

When a duty is imposed and power conferred upon a public agency, by necessary implication, the duty and power to do the thing in the manner directed by the Constitution, at-

tach. In this connection it may be proper to say that we do not concur in the suggestion contained in the answer that the graded school district of Kernersville can be confined to the limits prescribed by the act in regard to the white school and include contiguous territory for the colored schools. The school district prescribed by the act must include both races, and the taxes levied and collected upon the property and polls of both races in the district must be applied to the support and maintenance of a graded school for the children of both races—the schools to be separated and the children of each race to be taught in a separate school. In carrying out the provisions of the act, the imperative mandate of the Constitution, that there shall be no discrimination in favor of, or to the prejudice of, either race, must be observed. Thus construed, the constitutional requirement is complied with.

The act, section 4, expressly confers upon the board of trustees "exclusive control of the public school interests, funds and property in the graded school district as hereinafter provided." It is said that there are provisions in the act controlling this general grant of power which discriminate against the children of the colored race.

Before discussing the provisions objected to, we wish to note that another well settled rule in the construction of statutes is enforced by the courts. If the general scope and purpose of the statute are constitutional, and constitutional means are provided for executing such general purpose, the entire statute will not be declared void, because some one or more of the details prescribed, or minor provisions incorporated, are not in accordance with the Constitution, provided such invalid parts may be eliminated without destroying or materially affecting the general purpose. The rule is thus stated: "Where the unconstitutional portions are stricken out and that which remains is complete in itself and capable of being executed in accordance with the apparent legislative intent, it must be sustained." 26 Am. & Eng. Enc.

(2 Ed.), 570, in which a large number of illustrative cases are cited. This court has frequently recognized and enforced the rule. *Berry v. Haines,* 4 N. C., 311; *Darby v. Wilmington,* 76 N. C., 133; *Cotton Mills v. Waxhaw,* 130 N. C., 293. The difficulty is usually found in the application of the rule.

The general purpose and scope of the act under examination are declared to be to establish a graded school in the town of Kernersville. This purpose is not only in accordance with the Constitution, but in the furtherance of the right of the people to have the privilege of education and the duty of the State to guard and maintain that right. Dec. of Rights, section 27. The particular form and method of securing the right by the establishment of graded schools, when adopted by the people in accordance with law, has been uniformly maintained by this court. The district is clearly defined, the establishment of the school and levy of the tax are made dependent upon the will of all of the qualified voters within the district at an election to be held for that purpose. The tax is uniform upon all the property in the district, and the constitutional equation upon property and polls observed. All of the children within the school age are admitted, and, as we have endeavored to show, by reading the act in the light of the Constitution, this includes children of both races, to be taught separately. There is no discrimination in regard to the application of the tax in respect to races. A board of trustees is provided with ample power to execute the law.

The plaintiffs suggest that by section 7 it is provided that the money, which shall be apportioned under the general school law to the school district, shall be turned over to the treasurer of the trustees of the district for the benefit of said school, provided, that in apportioning the school fund of the county, the said graded school shall be allowed the proportion of the fund due *per capita* to the white children of school age.

We are not quite sure that we correctly interpret this section. We find in other acts, establishing graded schools, a similar provision in regard to the application of the fund from the general school tax apportioned to the children within the district, but such fund is usually directed to be received by the trustees and applied under their direction. If it is the purpose and effect of the seventh section to empower the use of all of the public school fund apportioned to the graded school district for the white schools, it is clearly in violation of the Constitution. This money, after apportionment, belongs to the children of both races and should be applied to the support of the schools for both races, without discrimination or prejudice.

Some light is thrown upon the subject by the answer of the defendants. It seems that prior to the passage of this act, the school district for the white children comprised the town of Kernersville containing 307 children of school age. The district for the colored children included contiguous territory, the number of colored children within the limits of the new district being only 68; that the public money from the general school fund has already been apportioned to the colored school district regardless of the Act of 1905, and that it is only the money apportioned to the white children which is to be paid over to the defendant board. We gather from the answer that the defendant board supposed that the Act of 1905 in no way changed the district established for the colored children. In this view His Honor did not concur, nor do we. It is permissible for the school authorities, under the general school law in each county, to so arrange the districts as to meet the needs of each race, that they may be of different territorial boundaries. The reasons for doing so in many cases are obvious. When, however, a new district is created by the Legislature with power to levy a special tax, and maintain a graded or large public school under the control of a separate and special board, we

are unable to see how the uniformity which the Constitution requires, as construed in *Puitt's case,* can be maintained, unless the district includes the children of both races. The difficulties in doing so are apparent.

We think, therefore, that so much of section 7, as undertakes to distinguish between the races in regard to the money apportioned from the public school fund, is invalid. This, however, does not affect the other portions of the act.

We can see no reason why the defendant board may not, under the general power "to control the public school interests, funds and property in the graded school district," receive the money apportioned to both races and apply it in the way provided by the Constitution. There is nothing in the section prohibiting them from doing so.

Section 8 is also obscure in its terms. It provides that the property of the public school for white children in the district shall become the property of the board of trustees, and that they may in their discretion sell the same and apply the proceeds to the use of the public graded school to be established. We infer from other provisions of the act that it was deemed necessary to give the board express power to sell this property, for the purpose of providing another building with the amount received, together with the proceeds of the bonds which they are by section 9 empowered to issue.

The answer of the defendants in respect to their purposes in regard to this property is obscure. They say they are advised and believe they are empowered to take charge of the colored school property in the district, and that they are intending to use the property for the purpose of a graded school for white children in the district, until they can build a more suitable house for school purposes. While the language of the answer would seem to be capable of the construction that they intend to take the property of the colored school and apply it to the use of the white school, this cannot be reconciled with other portions of the answer, in which

they declare their intention to maintain a school for both white and colored children, affording them equal school facilities. They further say, and His Honor so finds, that the present school building for the colored school is amply sufficient, whereas the building for whites is totally inadequate. Of course the defendants have no right to take the school building now provided for the colored children and use it for the whites. We assume they have no such purpose. Their entire answer repels any such construction. However all this may be, it does not render the portions of the act establishing the school invalid.

It is the duty of the defendant board of trustees to proceed to establish a graded school, in which all the children of school age within the new district may attend, to separate the schools into two sections or departments, in one of which the white children shall be taught, and in the other the colored children. The effect of the act is to take out of the original colored school district all of the property and children within the limits of the new district created by the act. In the provision made for executing the law, the board shall not discriminate against either race, but shall afford to each equal facilities. It is not intended by this that the taxes are to be apportioned between the races *per capita,* but that the school term shall be of the same length during the school year, and that a sufficient number of teachers, competent to teach the children in each section or building, shall be employed at such prices as the board may deem proper. If the board, or its successors, shall refuse to establish and maintain the school upon a constitutional basis and in accordance with the constitutional provisions, the courts have power, by the writ of *mandamus,* to compel them to do so.

We gather from the answer that the defendants propose to execute the important trust reposed in them in accordance with law. There can be no possible room for doubt or controversy in respect to the two principles underlying and

always controlling the establishment and maintenance of the public school system of this State. This system includes all public schools, or schools receiving for their support public taxes, either general or local. First, the two races must be taught in separate schools, and, second, there must be no discrimination for or against either race. Const., Art. IX, sec. 2.

In the Revisal of 1905, section 3990, the Legislature codified the Constitution and all statutes then in force involving these essential principles. They express the well considered and matured opinion of the people of the State upon this subject of such vital importance to the welfare of all the people. Keeping them in view, the matter of administration is left to the Legislature and the various officers, boards, etc., appointed for that purpose. This court would be reluctant to declare invalid an act establishing any public school when it had received the sanction of the people, directly and locally interested, unless it was manifest that these principles were violated. Much must be left to the good faith, integrity and judgment of local boards in working out the difficult problem of providing equal facilities for each race in the education of all the children of the State. Local conditions, relative numbers and other well recognized factors enter into the problem, and must be dealt with in a spirit of justice to all concerned, and to promote the honor and welfare of the State. In no sphere of our system of local self-government, under the guidance of a general superintendence and constitutional limitations, is the capacity of the people to govern themselves more strongly illustrated.

In this connection we wish to say that the language used in the opinion in *Hooker v. Greenville*, 130 N. C., 473, which seems to hold that in no other way than by a *per capita* distribution of all taxes collected for public schools, can the Constitution be observed, does not meet our approval. It was not necessary to the decision of that case, and we call

attention to it to exclude the conclusion that it is regarded as the opinion of this court. The learned and always candid counsel for the plaintiffs stated in his argument that he did not so construe the Constitution.

In regard to the bonds proposed to be issued, the proceeds to be used in the erection and furnishing of a suitable school building in the school district, we find nothing in the act to indicate that the use directed is prohibited by the Constitution. His Honor finds that there are 307 white children and 68 colored children in the district, and that the erection of the building for additional accommodation of the white children is necessary; that the public school building for the colored children is amply sufficient and commodious. We are unable to perceive how or why the erection of a necessary school building for 307 white children is a discrimination against 68 colored children for whom an amply sufficient and commodious building has been supplied. To require the same size building for 68 children as is furnished to 307, would be to keep the law neither in letter nor in spirit.

We have given anxious and careful consideration to the language of the act and the arguments of counsel, and we conclude that the general purpose and scope of the act are not in violation of the Constitution; that such sections as are subject to criticism do not so affect the statute as to render it invalid.

The defendant board of trustees will, we are sure, as they express their purpose to do, discharge their duties so that all the children of both races shall have equal facilities to attend the schools under the constitutional restrictions provided. If they should not do so, the courts would promptly aid any class of persons discriminated against.

We concur with His Honor that the election was valid. The judgment vacating the restraining order and refusing the injunction must be

Affirmed.