COMMISSIONERS OF BLADEN COUNTY v. S. W. BORING.

(Filed 21 February, 1918.)

**1. Constitutional Law—Counties—Townships—Bond Issues—Endorsement— "Faith and Credit."**

Where townships· upon petition to the county commissioners are permitted by statute to call an election for the purpose of voting upon the question of the issuance of township bonds for the roads of the township, the proceeds to be turned over to the sole management and control of the township commissioners, with further provision that the county endorse the bonds upon being satisfied of ·the validity of the issuance under the statutory authority conferred, the endorsement by the county of the township bonds is a loan of the credit of the county, without benefit to the other townships, however remote the liability and contrary to the Constitution, Art. I, sec. 17; Art. VII, sec. 7. *Commissioners v. State Treasurer,* 174 N. C., 141, cited and applied.

**2. Same—Statute—Intent—Part Constitutional.**

Where a provision of a statute authorizing the issuance of bonds is valid and complete in itself and evidences the intent of the Legislature that township bonds for road purposes may be voted upon and issued as bonds of the township, and there is an unconstitutional provision of the same act authorizing the endorsement of the bonds by the county tending to increase the market value of the bonds: *Held,* the unconstitutional feature of the statute does not affect the validity of the constitutional part, and the bonds may be sold without the endorsement of the county.

**3. Counties—Townships—Principal and Agent—Constitutional Law.**

*Held,* under the facts of this case, that a county may act as the agent of a township in the issuance of the bonds of the township for road purposes.

**4. Constitutional Law—"Faith and Credit" — Statutes — Counties — Townships—Bond Issues—Principal and Agent.**

Where the townships of a county are authorized by statute to separately act upon and issue township bonds for road purposes, with an unconstitutional provision that the county endorse the bonds of such townships as should issue them, the fact that several or all of the townships have voted for the issuance of the bonds under the valid provisions of the act does not affect the unconstitutional provision thereof as to the endorsement of the bonds by the county.

CLARK, C. J., concurring in part and dissenting in part.

CIVIL ACTION, tried before *Bond, J.,* at December Term, 1917, of BLADEN.

Under the provisions of chapter 336, Public-Local Laws of 1915, three townships in Bladen County have voted for the issue of bonds for the improvement of the roads in the township, to the amount of $27,500, and the county commissioners sold the bonds to defendant and offered to execute the same on behalf of the townships and to endorse them on behalf of the county as provided in the act. The defendant refuses to

*J*

comply with his contract of purchase, alleging that the commissioners have no right to endorse the bonds on behalf of the county, and that the bonds are not valid as township bonds without such endorsement, and the court below so held.

The facts agreed exclude any question as to the passage of the bill, the regularity of the elections authorizing the bonds, or the sale of the bonds, and the controversy narrows itself down to a construction of said act upon two points:

1. Have the commissioners of Bladen County the right, on behalf of the county, under section 5, chapter 336, Public-Local Laws of 1915, to endorse and guarantee payment of the bonds?.

2. If the commissioners have no such right, are not the bonds valid as township bonds?

The act (in section 1) provides that when 25 per cent of the voters in any township in the county shall file with the commissioners a petition asking for an election in such township upon the question of issuing road bonds, the commissioners must order the same. The petition, as well as the notices of election following it, must state the amount of bonds to be voted on, the term of years for which they are to run, the rate of interest that they shall bear, not to exceed the legal rate. All these questions are left to the people of the township.

Section 2 of the act provides that if a majority shall be cast in favor of the bond issue, the county commissioners shall advertise for sale, sell, and issue the bonds for the township, and that the bonds so issued shall be township bonds and not county bonds.

Section 3 of the act is as follows: "The Board of Commissioners of Bladen County, in order to provide for the payment of the interest on such bonds as may be issued by any township, and to create a sinking fund which shall be sufficient to redeem such bonds at maturity, shall compute and levy each year, at the regular time for levying other taxes, a sufficient tax on all taxable property and polls within such township; and in so doing shall observe the constitutional equation between property and polls."

Section 11 of the act provides that these taxes shall be collected as other State and county taxes are and shall be kept separate and distinct from all other taxes, and used only for the purpose of paying the interest and creating a sinking fund. The act then provides for the election of township highway commissioners, throws certain definite restrictions around the expenditure of the money and the manner of building the roads, and the latter part of section 29 provides that when the bonds have been sold, the county commissioners shall turn over to the highway commissioners the proceeds therefrom, less any amounts

which may be necessary to keep in hand in order to meet any interest accruing before the next tax levy can be collected.

Section 5 is as follows: "That when any such bonds shall have been issued, and it appears that the sale of the same can be effected, the Board of Commissioners of Bladen County shall cause an investigation to be made for the purpose of ascertaining whether or not the said bonds have been issued in accordance with law and are a binding obligation upon the township issuing the same; and if it shall appear that the election herein provided for has been properly held, that the bonds have been properly and legally issued, and that the same constitute a binding obligation against the taxable assets of such township, then the Board of Commissioners of Bladen County shall, on behalf of the county, endorse and guarantee the payment of such bonds and the interest thereon: *Provided,* that in the event default should be made by the said township or the officials thereof in the payment of either the interest or the principal of said bonds, the county of Bladen shall not be in any way liable for the payment of any amount whatsoever on account thereof until all the taxable assets of the township issuing such bonds shall have been fully exhausted."

The court held, and so adjudged, that the commissioners had no legal authority to guarantee the bonds, and that without such guaranty they are not valid obligations of the county or of the township. Plaintiffs appealed.

*E. F. McCulloch, Jr., and Bayard Clark for plaintiff.*
*Sinclair, Dye & Ray for defendant.*

WALKER, J., after stating the case: One question in this case is whether it is governed by the principle stated and applied in *Commissioners v. State Treasurer,* 174 N. C., 141. We are unable to distinguish the two cases. The following we consider to be a fair statement of the substance of that decision:

First. Under Laws of 1917, ch. 6, sec. 20, providing that townships and road districts created by special act of the General Assembly may avail themselves of the benefits of the chapter, a statute designed to enable the State to lend its aid to road building and maintenance in counties, townships, and road districts upon compliance with the requirements set out, provided that the bond or undertaking filed with the State Treasurer shall be executed by the board or boards of county commissioners of the county or counties in which such township or road district is situated, and under other provisions of the chapter and its general meaning and purpose, whether a loan from the State for the purpose of road building and maintenance be applied for by a county, township, or road district, the bond tendered the State must be that of the county.

Second. The Legislature of North Carolina is without power to re-
quire a county to give its binding obligation to pay the interest on a
loan at 5 per cent for 41 years on the application and vote of a town-
ship or road district for the construction and maintenance of the roads
of the township or district, since it is not within the legislative power
to tax one community or local-taxing district for the exclusive benefit
of another; hence Laws 1917, ch. 6, sec. 20, so requiring a county is
violative of Constitution, Art. I, sec. 17, providing that no person shall
be in any manner deprived of his property but by the law of the land.

Third. A State or county, as a rule, may lend its aid or expend its
money in the building or maintenance of a public road anywhere within
its borders when it is being done for the public benefit or as a part of
a State or county system, but no taxing district can be taxed for the
exclusive benefit of another district.

Fourth. Laws 1917, ch. 6, is designed to enable the State to lend its
aid to road building and maintenance in counties, townships, and road
districts, and section 20, requiring the county to give its binding obli-
gation to pay the interest on a loan at 5 per cent for 41 years on the
application and vote of a township or road district for the construction
and maintenance of the roads of the township or district, is violative of
Constitution, Art. VII, sec. 7, providing that no county, city, town, or
other municipal corporation shall contract a debt, pledge its faith, or
loan its credit, nor shall any tax be levied or collected by any officers of
the same, unless by a vote of the majority of the qualified voters therein.

Fifth. When two constructions of a statute are permissible, the courts,
in favor of upholding legislation, should adopt the construction which
is in accord with the organic law; but the principle does not justify a
departure from the plain and natural significance of the words employed
which the meaning and purpose of the law clearly tend to confirm and
support.

Sixth. When the constitutionality of a statute is the question what
the statute authorizes, and not what is being presently done under it,
furnishes the proper test of validity.

The only difference between that case and this one is merely formal,
for there the county was required to issue the bond as its own independ-
ent obligation for the township, the county being the principal, while
here the county is required to endorse or guarantee the township bond.
In the one case the obligation of the county is primary, in the other it
is secondary. Nevertheless, the county would incur an obligation for
the township, contrary to the principle of the *Lacy case,* that a State
or county, as a rule, may lend its aid or expend its money in the build-
ing or maintenance of a public road anywhere within its borders when
it is being done for the public benefit or as a part of a State or county

system; but no taxing district can be taxed for the exclusive benefit of another district. Under such a provision as that contained in the statute, one township would get the benefit of road improvement and maintenance within its borders at the expense of all the other townships and without their consent expressed at an election. We have frequently held, at least in principle, that where the roads of the different townships or districts are set apart and a scheme is devised whereby they can be planned, laid out, constructed or improved entirely under the township's control and management, and without reference either to State or county benefit, it is not within the legislative power to tax one community or local district for the exclusive benefit of another. *Harper v. Comrs.*, 133 N. C., 106; *Faison v. Comrs.*, 171 N. C., 411; *Keith v. Lockhart*, 171 N. C., 451, and numerous cases in other jurisdictions collected in *Commissioners v. State Treasurer, supra,* are to the same effect.

"The taxing district through which the tax is to be apportioned must be the district which is to be benefited by its collection and expenditure. The district for the apportionment of the State tax is the State, for a county tax the county, and so on. Subordinate districts may be created for convenience, but the principle is general, and in all subordinate districts the rule must be the same." Cooley on Taxation (3 ed.), 430.

"The constitutional requirement of uniformity of taxation forbids the imposition of a tax on one municipality, or part of the State, for the purpose of benefiting or raising money for another." 37 Cyc., 749.

Taxes should be laid upon those only for whose benefit they are imposed, and when the burden is laid upon one locality for benefits accruing solely to another it is violative of constitutional guarantees as contained in the Constitution, Art. I, sec. 17, providing that no person shall be deprived of his life, liberty or property but by the law of the land. The clear injustice of any other rule of action is apparent. It is provided in Constitution, Art. VII, sec. 7, that no county, city or town, or other municipal corporation, shall contract a debt, pledge its faith or loan its credit, nor shall any tax be levied or collected by any officers of the same, except for the necessary expenses thereof, unless by a vote of a majority of the qualified voters therein. While the construction of public roads is a necessary expense, as has been so often decided, we held in the *Lacy case* that the establishment of a road system confined to a township or road district, and under its control and for its special benefit, is not a necessary county expense; and even if sanctioned by a majority of the voters of the township or district at an election, the Legislature cannot create any obligation of the county which must be paid by taxation of the entire county when the voters in the latter have not consented thereto, and there is not even a method provided for their doing so.

The Court said in *Commissioners v. State Treasurer, supra:* "A localized road system can in no sense be considered a necessary county expense, and a statute, or that portion of it, certainly, which undertakes to establish a county liability for its construction and upkeep, is in clear violation of this wholesome constitutional provision, and must be declared invalid."

This review of the *Lacy case,* we think, shows unmistakably that this case falls directly within its governing principle. It can make no difference that in the *Lacy case* the county was a principal, and not a surety or guarantor for the township. In either case the county is made to assume a liability or obligation for the township. And it must be observed that Constitution, Art. VII, sec. 7, refers not only to a debt, but to a pledge of its faith or loan of its credit, and a guaranty is of the latter class. The prohibition of that section was on ground upon which the decision in the *Lacy case* was based. The language of section 7 of Article VII was purposely given a broad scope so as to include any and every form of indebtedness, legal obligation or liability, for it was seen that the same rule should be provided for all in order to protect the people against discriminating and unjust taxation.

But it is argued that the county may never have to pay, as the "taxable assets" of the township must be fully exhausted before it can be called upon to make good any deficiency. This does not destroy the debt, pledge of its faith, or loan of its credit, or alter in the least the legal character of its undertaking, and it may also be said that the suggestion, if carried out, would lead to the conclusion that if the county will never have to pay, there was no use in requiring its guaranty of the debt, as it would add nothing to the credit of the township or to the salable value of the bonds on the market. The question, therefore, is not whether the county *will* have to pay, but whether it *may* have to pay on default of the township. An ordinary guarantor may never be called upon to pay for his principal, because the latter is able himself to pay, but this does not alter the character of his liability in law. It is only something incident to the relation he has assumed.

In the *Lacy case* this contention also was met as follows: "We are not inadvertent to the fact that thus far a tax only on the township applying for the loan is contemplated by the county commissioners; but, as we have seen, the bond to be given fixes an obligation on the county for the entire sum, and the statute provides that if there be default in payment of the 5 per cent interest for thirty days, the entire amount due and all penalties shall 'at once become due and payable' and enforced by action. And, as we have said in former decisions, 'It is no answer to this position that, in the particular case before us, no harm is likely to accrue, or that the power is being exercised in a

benevolent manner, for when a statute is being squared to the require-
ment of constitutional provision, it is what the law authorizes, and not
what is being presently done under it, that furnishes the proper test of
validity.' " But the probability of the county never having to pay any-
thing not only does not change the nature of its obligation, but the
suggestion is further answered by the fact that it is not the eventual
amount of the liability that determines the question of its original
validity, but solely the character of the obligation assumed, whether the
money risk is small or great. We must hold, therefore, that the *Lacy
case* applies, and that the county has no power to guarantee the payment
of the bonds.

But we are of the opinion that this conclusion does not affect the
validity of the township bonds. The guaranty of the county was in-
tended to add its credit to that of the township and increase thereby the
market value of the bonds. It surely was not intended to go beyond
this and make the guaranty a condition precedent to the validity of the
bonds, or, in other words, that the power of the township to issue the
bonds and that of the county to guarantee them were inseparably joined
together, so that the one could not exist without the other. The guaranty
was intended for the benefit of the township and the purchasers of its
bonds. If they choose to take the bonds without the guaranty, we do
not see why they cannot legally do so. We think the principle of the
following cases applies: *Berry v. Haines,* 4 N. C., 311; *Darby v. Wil-
mington,* 76 N. C., 133; *Cotton Mills v. Waxhaw,* 130 N. C., 293; *Lowery
v. School Trustees,* 140 N. C., 42-43.

Where a part of a statute is invalid, the remainder, if valid, will be
enforced, provided it is complete in itself and capable of being executed
in accordance with the apparent legislative intent; but if the void clause
cannot be rejected without causing the statute to enact what the Legisla-
ture did not intend, the whole of it must fall. 26 A. & E. Enc. of Law
(2 ed.), 570; Black on Const. Law, p. 64; *Lowery v. School Trustees,
supra; Keith v. Lockhart, supra.*

"Even in a case where legal provisions may be severed in order to save,
the rule applies only when it is plain that the Legislature would have
enacted the legislation with the unconstitutional provisions eliminated."
*Employers' Liability Cases,* 207 U. S., 463, 501; *R. R. v. McKenonill,*
203 U. S., 514; *Riggsbee v. Durham,* 94 N. C., 800; *Greene v. Owen,*
125 N. C., 212.

The leading or dominant intent in passing this statute was to author-
ize the issuing of township bonds, which can be done without any
endorsement of the county, and the object, if not the sole object, to be
attained by the guaranty was, as we have said, to increase the market
value of the bonds so that they may be sold for an adequate price, or to

the best advantage. But if this can be done without the endorsement,. and it appears in this case that it can be done, we should not declare the entire statute to be void. It is stated in the brief of the defendant's. counsel that he will take the township bonds without the county's endorsement if the county has no power to endorse them.

There can be no doubt upon the question incidentally presented in the case that the county may act as agent for the township in the manner described in the statute. *Jones v. Comrs.,* 107 N. C., 248, 265; *Mc-Rackan v. R. R.,* 168 N. C., 62; *Edwards v. Comrs.,* 170 N. C., 448.

The fact that more than one of the townships has voted for the issue of bonds, each for itself, can make no difference in the result. They do not even collectively constitute the county in its corporate capacity, but each is acting for itself, and the law is the same as if only one township had issued bonds, for several of the townships is no more the same entity as the county than one township would be, not even if they acted in concert, which they cannot do, as it is required by the statute that each township should act for itself by a separate vote, the county being its agent in certain respects.

Our conclusion is that the township bonds are valid, but that the county cannot endorse them or add its guaranty to them. This modifies the judgment.

The costs of this Court will be taxed against the plaintiff Board of Commissioners of Bladen County.

Modified.

CLARK, C. J., concurring in part and dissenting in part: The bonds. being issued by the township for necessary purposes, under a vote of the people, and under the authority of an act of the Legislature, there can be no doubt as to their validity.

The act, however, is also equally explicit (section 5) in authorizing the board of commissioners on "behalf of the county to endorse and guarantee the payment of such bonds and the interest thereon," after investigation by the commissioners and a finding by them that the bonds have been legally issued and are a binding obligation against the taxable assets of such township, with a *proviso* that "the county of Bladen shall not be in any way liable for the payment of any amount whatsoever on account thereof until all the taxable assets of the township issuing such bonds shall have been fully exhausted." With this *proviso,* the county could not incur any liability, as a matter of fact, and the endorsement is merely to give the bonds a higher market value, thus benefitting the township without risk to the county.

A perusal of the State Constitution with a microscope of the highest possible power will fail to discover a single line or word or intimation

that prohibits the Legislature from authorizing a county to endorse the bonds of one of its townships issued for necessary purposes. If there is, the language should be pointed out. It would be passing strange if there could be such prohibition upon the Legislature since the Legislature has repeatedly bound not only the county in which the local improvement has been made, but all the counties of the State therefor. The Quaker Bridge Road in Jones and Onslow and the public road in Jones County from Core Creek to Trenton were built at State expense; Jones County bearing its part, though the road is no part of a State system. The same is true as to a public road built at State expense in Pender County and the Hickory Nut Gap Road and many similar enterprises. All the numerous State appropriations for railroads have been made by the sale of bonds issued by the whole State for the benefit, in each instance, of a few counties through which these roads run.

Even now the State is giving aid for the construction of a short railroad from Elkin to Sparta and to the reconstruction of the Hickory Nut Gap Public Road. The Dismal Swamp Canal and Harlowe's Creek Canal were built largely at State expense, though of local value mostly and of no benefit to the State at large. If Cherokee and other western counties can be taxed to pay bonds issued for public roads and canals in the East and if California and Oregon can be taxed for building waterways or highways in North Carolina, the Legislature can certainly, as in this case, authorize a county to give the aid of its credit to one of its townships by endorsing bonds issued for necessary expenses, this being done without any risk to the county and when there is nothing in the Constitution restricting the Legislature in such exercise of its power to direct the public policy of the State.

Our State has also pursued the policy of exchanging bonds with a railroad corporation, giving its own bonds for the railroad bonds, as among other instances, to aid in building the short line of railroad from Taylorsville to Statesville, better known as the "Junebug Railroad," and in the construction of the Chatham Railroad, with which it not only exchanged State bonds for railroad bonds, but it also exchanged State bonds with the city of Raleigh, which had subscribed for the construction of that railroad, and in other cases. The instances have been numerous.

In passing upon the constitutionality of the statute, the question is not whether this Court or a previous Court has held such act invalid or valid, but whether the Constitution itself shows any prohibition on the Legislature to pass the act. Such prohibition must be clear and explicit, "beyond a reasonable doubt." It was so held by *Chief Justice Marshall,* who invented, or first asserted, the claim of the supremacy of the courts over the Executive and Legislative Departments, in *Marbury v. Madison,* 1 Cranch, 137, and this restriction on what would otherwise be an unlim-

ited and arbitrary power in the courts—the autocracy of an irreviewable veto—has been affirmed several hundred times since by State and Federal Courts. *Ogden v. Sanders,* 12 Wheat., 213; 6 R. C. L., p. 82, and cases cited in notes, secs. 81-86, and 98-116.

Unless the Legislature is expressly prohibited by the Constitution from passing an act, then the matter rests in the discretion of the law-making power, and the Court has no power to interfere with the legislative exercise of its right to direct the public policy of the State, without itself violating the Constitution, which provides that the three departments of the government—Legislative, Executive, and Supreme Judicial—shall be "forever separate and distinct from each other." Constitution, Art. I, sec. 8. Neither of the three departments is given control over the other two beyond the power given the legislative, which is nearest to the people and with shorter terms of office, to impeach and remove any official. In other respects, all three are left subject to control by the people only, who will pass upon their conduct in the election of their successors as public agents. So jealous has North Carolina always been of the free and untrammeled expression of its will by its Legislature, subject only to review by the people themselves, that this State has never given the Governor the veto power to this day. It certainly did not intend to give an irreviewable veto to the courts, especially in cases where the Constitution does not expressly forbid the General Assembly to act.