The plaintiff is a resident and taxpayer of the city of Winston-Salem, which is a municipal corporation. The city, the members of the board of aldermen, the mayor, and the secretary-treasurer of the city are the defendants. The material facts are set forth in the agreed case as follows:
3. The defendants are about to issue bonds, of the aggregate face amount of $2,500,000, of the city of Winston-Salem, pursuant to the provisions of the Municipal Finance Act, 1921, of North Carolina, constituting chapter 106 of the Public Laws of 1921, Extraordinary Session of North Carolina, as amended, for the purpose of acquiring, constructing, reconstructing and enlarging public school buildings in and for the city of Winston-Salem, and acquiring and developing lands for such school buildings and acquiring original furnishings, equipment and apparatus therefor.
4. An ordinance authorizing the issuance of said bonds was introduced and adopted at a meeting of the board of aldermen of the city of Winston-Salem, held on 20 January, 1928. A copy of said ordinance, marked Exhibit "A," is hereto annexed and made a part of this agreed *Page 19 
case. An ordinance calling a special election on the question of issuing said bonds was introduced and adopted by said board on 20 January, 1928. A copy of said ordinance, marked Exhibit "B," is hereto annexed and made a part of this agreed case. At said election held pursuant to said ordinance, on 6 March, 1928, 1,966 votes were cast in favor of the issuance of said bonds and 11 votes were cast against the issuance of said bonds. The total number of persons qualified to vote at said election, as shown by the registration books, was 2,246. Said board of aldermen has canvassed the returns of said election and has judicially determined and declared the result of said election. A copy of the minutes of said board of aldermen, marked Exhibit "C," is hereto annexed and made a part of this agreed case.
5. The city of Winston-Salem as now constituted exists and is organized pursuant to and in accordance with chapter 232 of the Private Laws of 1927, which was ratified and took effect on 3 March, 1927. Previous to the enactment of said chapter 232 of the Private Laws of 1927, said city had existed and been organized pursuant to and in accordance with chapter 180 of the Private Laws of 1915, and the acts amendatory thereof and supplemental thereto. Section 2 of said chapter 232 of the Private Laws of 1927 sets forth the corporate boundary lines of said city. The territory included within said corporate boundary lines embraces territory which was not included within the corporate boundary lines of said city as set forth in said chapter 180 of the Private Laws of 1915, and said territory not embraced within said corporate boundary lines as set forth in said chapter 180 of the Private Laws of 1915 was added to and made a part of said city either by special or local acts of the General Assembly of North Carolina passed subsequent to the enactment of said chapter 180 of the Private Laws of 1915 or by said chapter 232 of the Private Laws of 1927. A substantial portion of said added territory was added to and made a part of said city by special or local acts enacted since 10 January, 1917. Of such territory added since 10 January, 1917, a portion was at the time of its annexation to said city a part of one or more nonlocal tax school districts and a portion was a part of one or more local tax school districts, under the control of the county board of education of Forsyth County. No portion of said territory annexed to said city since 10 January, 1917, was at the time of its annexation a part of any special charter school district.
6. Both chapter 180 of the Private Laws of 1915 and chapter 232 of the Private Laws of 1927 provide that the board of aldermen of the city of Winston-Salem "shall provide for the establishment, continuance, maintenance and support of a system of public schools, and for this purpose shall annually appropriate a certain part of the taxes of the city." *Page 20 
The plaintiff prayed that the defendants be enjoined from issuing the proposed bonds and that he recover his cost. The prayer was denied, the court adjudging that the defendants be not restrained or enjoined and that they recover their costs. The plaintiff excepted and appealed.
At the session of 1927 the General Assembly amended the charter of Winston-Salem, defined the corporate limits of the city, and provided for its government. Private Laws 1927, ch. 232. In section 45 the board of aldermen is required to make provision for the establishment, continuance, maintenance, and support of a system of public schools; to appropriate annually for this purpose a certain part of the taxes of the city, and to ascertain and fix the amount of the appropriation. The substance of these provisions was included in the charter of 1915. Private Laws 1915, ch. 180. The appellant says that section 45 is in conflict with Article VII, sec. 7, of the Constitution, and therefore inoperative for the reason that the maintenance of schools is not a necessary expense (Hollowell v. Borden,148 N.C. 255); that the charter contains no provision for submitting to the qualified voters of the city the question of levying a tax for schools, and that the omission of such a requirement invalidates that part of the section which purports to authorize the levy. His deduction is that as no means is provided for the exercise of the power, the power itself must fail. To support this proposition he cites Gastonia v. Bank, 165 N.C. 507.
In that case the decisive fact was that the Legislature had enacted a law which upon its face, without providing for a vote of the people, authorized the aldermen of Gastonia to issue bonds for improving the streets, etc., and for erecting graded school buildings; and the Court held that as the erection of school buildings is not a necessary expense, so much of the act as authorized the sale of bonds for this purpose was invalid because the act did not require submission of the question to the qualified voters. No election had been held and the will of the voters had not been ascertained. But in the case at bar an election was duly conducted and the qualified voters with substantial unanimity approved the issuance of bonds. The language used in Gastonia v. Bank, supra, is not to be given a strictly literal meaning; it must be considered in connection with other decisions. For example, in Bank v. Comrs., 116 N.C. 339, 363, it was insisted that it is as essential to the validity of bonds that the Legislature in express terms should authorize the election and specifically require the votes of a majority of the qualified voters as that it should authorize financial aid from the town. Disapproving *Page 21 
this contention the Court remarked: "It is admitted to be an essential prerequisite to the validity of such bonds that the Legislature should grant the power to aid, and that the majority of the qualified voters should signify their approval by their ballots cast. The machinery for ascertaining the will of the electors is a secondary consideration. The main purpose was to prohibit the imposition of a tax for certain objects without the assent of a majority of the qualified voters. . . . Where legislative sanction is given and the will of the majority of qualified voters is actually ascertained, it is certain that the danger line has not been crossed, so as to wrongfully subject municipalities to the burden of a debt for any purpose except necessary expenses. The imperative requirement of the Constitution is that there shall be a concurrence of the legislative and the popular will, the former evidenced by a grant of authority to vote, the latter by the record that a majority of the qualified voters have cast the ballots in favor of creating the debt. Whether the legislative purpose is expressed or may be fairly implied from the language of the statute, is immaterial (1 Dillon, supra, sec. 89 (55); Clark v. Des Moines, 87 Am. Dec., 423), as is the question whether the election is conducted under statutes passed for the particular purpose, or, in the absence of such special provision, under the general election law enacted for the town or for counties generally, so that the sense of the voters is unquestionably and fairly ascertained. The power to subscribe being given, the fair implication was that the Legislature intended that the use of the machinery provided generally for taking a vote to authorize the borrowing of money might be used. The principle of strict construction is never `carried to such an unreasonable extent as to defeat the legislative purpose fairly appearing upon the entire charter or enactment.' If the special provision for holding an election in a town or county fails to provide in detail the mode or what is in common parlance called the machinery for conducting it, it must be inferred that the Legislature intended that general election laws might be resorted to, to fill in the hiatus, and not that the legislative will should be thwarted or defeated by any such omission."
The Municipal Finance Act expressly confers upon cities and towns the power to issue their negotiable bonds for any purpose for which they may raise or appropriate money, except for current expenses (3 C. S., 2937), and it impliedly confers the power to hold the necessary election. It is the machinery which is of "secondary consideration." The simple omission from the act of an express provision for holding an election cannot defeat the will of the qualified voters expressed in the manner prescribed under an implied power conferred by the law.
The plaintiff's second position is this: that the charter of the city conflicts with Art. VII, sec. 7, because it attempts to annex to the city *Page 22 
the territory of one or more nonlocal tax districts without permitting the voters in the annexed territory to vote either upon the question of annexing such territory or upon the question of levying school taxes therein. We may avoid confusion on this point by keeping in mind the distinction between statutes which control in the creation and consolidation of school districts and legislative authority to enlarge the boundaries of a municipal corporation. In Coble v. Comrs., 184 N.C. 342, we adverted to the distinction, saying that if the corporate limits are extended the inhabitants of the annexed territory, regardless of their will, must share the burdens of the entire municipality. Dillon on Municipal Corporations, Vol. 1, sec. 106. The object of the charter is to provide for the government, welfare and improvement of the city and not exclusively or primarily for the mere maintenance of schools. In our opinion the two objections set forth under the first assignment of error are without substantial merit and should be overruled.
It is contended that the charter is at variance with Article II, section 29, of the Constitution which declares, "The General Assembly shall not pass any local, private, or special act or resolution . . . establishing or changing the lines of school districts." We regard it as obvious that the incorporation of the city of Winston-Salem is not synonymous with the creation of a school district within the meaning of this section of the Constitution. The word "district" as used in the public school law is defined in 3 C. S., 5387. The definition was probably framed in view of the distinction between school districts and taxing districts. Coble v. Comrs.,supra. Art. II, sec. 29, applies to the former but not to the latter.Harrington v. Comrs., 189 N.C. 572. As a rule school districts are created by the county board of education. C. S., 5480. It is true that the boundaries of a "district" may be coterminous with those of a city or town (3 C. S., 5387), but it does not follow that an act extending the limits of a city or town in which public schools may be maintained is necessarily a special act establishing or changing the lines of school districts in violation of the constitutional provision. Here the annexed territory was added to and made a part of the city by special or local acts of the Legislature and not by the board of aldermen upon petition of the voters. When a new governmental agency is established by the Legislature, such as a municipal corporation, it takes control of all the affairs over which it is given authority, to the exclusion of other governmental agencies. Gunter v.Sanford, 186 N.C. 452. The primary purpose of the Legislature in granting the charter was to invest the inhabitants of the city with the control of all matters of municipal concern. The charter does not purport to deal with the question of establishing a special charter district or any other district mentioned in 3 C. S., 5387, or with the question of changing the lines of *Page 23 
school districts; and any change that may have been made in this respect was a mere incident in the accomplishment of the primary purpose of the Legislature. The decision in Brown v. Comrs., 173 N.C. 598, has direct bearing upon this question. There it is said that the framers of this amendment (Art. II, sec. 29) no doubt intended to leave intact the long recognized and salutary power of the Legislature to supervise and control the financial affairs of the municipalities of the State, and that as the bond issue was the direct object of the legislative act, a provision that the proceeds of the bonds should be used for road purposes did not bring the act within the prohibition of the constitutional amendment. This case and the authorities therein cited present cogent reasoning against the appellant's position.
It is provided in C. S., 2832 (Art. 16) that any city shall have the right to acquire, establish, and operate . . . schools. The appellant contends that this section is not available to the defendant for the reason that section 2786 (Art. 15) declares that all the provisions of Article 15 shall apply to all cities and towns whether they have or have not adopted a plan of government under C. S., ch. 56, and that this provision necessarily implies that the power granted by section 2832 relates only to cities and towns which have adopted such a plan. That the latter section applies, as in express words it declares, to "any city," seems to have been assumed inHenderson v. Wilmington, 191 N.C. 269, and the conclusion that it should be so applied is in accord with our construction of the statute. The bonds are not to be used in the maintenance of schools partly within and partly without the city, and for this reason Hood v. Sutton, 175 N.C. 98, is not in point.
The appellant takes the additional position that the erection of buildings for schools is not a municipal purpose for which the Legislature may authorize a city to issue bonds. The grant of power to acquire, establish, and operate schools (sec. 2832) is by implication the grant of such power as is necessary to exercise the power expressly granted. This section is at least permissive, but the charter of the city is mandatory: "the board of aldermen shall provide for the establishment, continuance, maintenance, and support of a system of public schools." This mandate and the express direction that the board shall annually appropriate a part of the city taxes for the designated purpose manifestly contemplate the acquisition or erection of such buildings as may be necessary for the continuance and maintenance of the schools. Necessary buildings are an integral factor in the maintenance of the school system and their construction under the facts here presented is clearly a municipal purpose. It is not necessary to review the numerous cases which are cited in the brief of the appellees as having direct relation to the subject. The judgment is
Affirmed. *Page 24