J. A. PEACOCK FOR HIMSELF AND ON BEHALF OF ANY OTHER TAXPAYERS OF SCOTLAND COUNTY v. COUNTY OF SCOTLAND AND SIDNEY D. SMITH, R. F. McCOY, TURNER K. McKENZIE, JESSE SNEED AND JAMES A. GIBSON, CONSTITUTING THE BOARD OF COUNTY COMMIS-SIONERS FOR THE COUNTY OF SCOTLAND.

(Filed 12 June 1964.)

**1. Statutes § 2—**

A statute enabling the consolidation of county and city school administrative units under the general laws and the levy of certain taxes for the construction and operation of the schools of the consolidated unit, does not violate Article II, Section 29 of the State Constitution, since it does not in itself undertake to establish or change the lines of a school district but merely provides machinery for action by local units under the general law, and further provisions of the statute requiring that the merger and the levy of the taxes be approved by a vote does not alter this result.

**2. Constitutional Law § 7—**

A statute requiring the levy of taxes in a school administrative unit sufficient to provide funds for current expenditures per pupil equal to that of the average for the State as certified by the State Board of Education is not unconstitutional as a delegation of legislative power, since the ascertainment of the amount of the tax is merely a matter of mathematical computation and does not involve the exercise of discretion.

**3. Counties § 5—**

Objection that the bonds to be issued by a county upon the approval of its voters would raise the county's outstanding indebtedness to an amount in excess of five per cent of the county's assessed valuation and that, therefore, the proposed bond issue was invalid, G.S. 153-87, *held* untenable when a portion of the county's debt was incurred under a statute exempting bonds issued thereunder from the limitation of G.S. 153-87, the total amount of the county's debt, excluding the special issue, not being in excess of the limitation of the statute.

APPEAL by plaintiff from *McKinnon, J.,* April Civil Session 1964 of SCOTLAND.

This is an action to enjoin the Board of Commissioners of Scotland County from issuing bonds, the proceeds from which are to be used for school construction, and from proceeding with the merger of the Laurinburg City School Administrative Unit and the Scotland County School Administrative Unit under the provisions of Chapter 707, 1963 Session Laws of North Carolina and Chapter 115 of the General Statutes of North Carolina.

The Act in question provides for a merger of the above named administrative units if approved by a majority of the voters of Scotland County.

The essential parts of the plan as adopted and approved by a majority of the duly qualified voters of Scotland County, are as follows:

(1)    The issuance of school building bonds in an aggregate principal amount not exceeding $1,750,000 for the purpose of building a new consolidated high school, remodeling, enlarging and reconstructing existing school buildings and other school plant facilities, and to acquire the necessary land and equipment therefor, in order to provide the additional school facilities in the County of Scotland to maintain the six months' school term in said county as required by Section 3 of Article IX of the Constitution of North Carolina, and the levy and collection of a sufficient tax for the payment of the principal of and interest on said bonds.

(2)    The merger of the Laurinburg City School Administrative Unit and the Scotland County School Administrative Unit and their respective Boards of Education. These Boards, if and when consolidated, shall constitute the Laurinburg-Scotland County Board of Education.

(3)    To require the Laurinburg-Scotland County Board of Education to request and the Scotland County Board of Commissioners "to appropriate annually from any local sources, including both general and supplemental tax revenues, such funds as will provide, at a minimum, current expense expenditures per student from local funds which shall be no less than the average current expense expenditures per student from local funds throughout the State, as determined by the latest certification of the State Superintendent of Public Instruction."

(4)    To authorize the County Commissioners to levy a countywide supplemental school tax not to exceed fifty cents (50¢) per one hundred dollar valuation.

The Act also provides for the details of the school merger, such as terms of office of Board members, election procedure, administrative personnel, *et cetera,* which the General Statutes do not provide for in detail.

Pursuant to the provisions of Chapter 707, 1963 Session Laws, the Scotland County electorate, on 3 March 1964, approved the merger of the City and County Administrative School Units, the issuance of the bonds to finance said construction, and authorized the levy and collection of a tax sufficient to pay the principal of and the interest on said bonds. The voters likewise approved the levy of the minimum tax as set forth in paragraph three above, as well as the supplemental tax of fifty cents.

Thereafter, on 19 March 1964, the Laurinburg Board of Education petitioned the Scotland County Board of Education and the State Board of Education requesting the merger of the City and County Administrative School Units; and on 20 March 1964 the said petition was approved by the Scotland County Board of Education and by the State Board of Education.

This action was instituted on 20 March 1964 and, by consent of all parties, the matter was heard on 6 April 1964 before the Honorable Henry A. McKinnon, Jr., Resident Judge of the Sixteenth Judicial District, without a jury, upon the facts stipulated by the parties and the allegations of the complaint admitted by the answer.

The trial judge denied the injunction prayed for and dismissed the action, holding that Chapter 707, 1963 Session Laws, does not violate the Constitution of North Carolina and that Scotland County had the authority to issue the bonds in question.

The plaintiff appeals, assigning error.

*Bailey, Dixon & Wooten for plaintiff appellant.*
*Smith, Leach, Anderson & Dorsett, and Henry A. Mitchell, Jr., for defendant appellees.*

DENNY, C.J. The appellant's first assignment of error is to the failure of the court below to hold that Chapter 707, 1963 Session Laws, establishes or changes the lines of school districts in violation of Article II, Section 29 of the Constitution of North Carolina.

An examination of the Act in question reveals that it is an enabling statute, in addition to and not intended to be in lieu of existing general statutes.

We do not construe the Act in question as one establishing or changing the lines of school districts in violation of Article II, Section 29 of the Constitution of North Carolina. In fact, the Act provides that the merger, if approved by the voters of Scotland County, shall be effected under the provisions of Section 115-74 of the General Statutes of North Carolina. This statute, among other things, provides: "Nothing

in this section shall prevent city administrative units from consolidating with county administrative units in which such city administrative unit is located, upon petition of the board of education of the city administrative unit and the approval of the county board of education and of the State Board of Education * * *."

Moreover, the Act further provides that the election authorized to be held in order to ascertain the wishes of the voters of Scotland County with respect to the adoption of the four proposals hereinabove set out, "shall be conducted in accordance with the applicable provisions of the General Statutes of North Carolina."

In the case of *Fletcher v. Comrs. of Buncombe,* 218 N.C. 1, 9 S.E. 2d 606, this Court held that a public-local Act which provides the machinery under which Buncombe County might establish school districts or special bond tax units in the county, was not in contravention of Article II, Section 29 of the State Constitution. The Court said: "It will be observed that the Act in question prescribes a method whereby school districts or special bond tax units may be uniformly established throughout the county. The Act itself deals only with the mechanics of establishing or changing the lines of school districts or special bond tax units, and does not, *ex proprio vigore,* undertake to establish or to change any such lines. These are matters which, in terms, are committed to the sound discretion of the county board of education. The constitutional prohibition as respects the matter now in hand is against direct action on the part of the General Assembly and not against the establishment of machinery for the accomplishment of these ends."

In *Hinson v. Comrs. of Yadkin,* 218 N.C. 13, 9 S.E. 2d 614, this Court upheld as constitutional the provisions of a public-local Act which provided in substance that, upon the receipt of a petition signed by not less than ten per cent of the qualified voters of the territory described in the petition, the County Board of Education may create a school district and define the boundaries thereof; and that upon a further petition by the County Board of Education the Board of County Commissioners shall order a special election to be held in such district upon the question of issuing bonds and notes and levying a tax for the payment thereof; and may, upon a favorable vote, proceed to issue such bonds and notes.

It will be noted that the Act challenged by the appellant does not purport to authorize any plan or proposal that could not have been instituted and carried out under provisions of the General Statutes of North Carolina. It does require, however, that each of the four proposals be approved by the voters of Scotland County. The General Statutes do not require that a merger of school districts or units

be approved by a vote of the qualified voters of the area; such consolidation requires only the approval of the County Board of Education and the State Board of Education.

The fact that the Act requires that the proposed merger be approved by the voters of Scotland County before such merger would become effective, does not make the Act unconstitutional. This assignment of error is overruled.

The appellant further assigns as error that, upon the merger of the two administrative units involved, the Board of Commissioners of Scotland County shall "appropriate annually from any local sources, including both general and supplemental tax revenues, such funds as will provide, at a minimum, current expense expenditures per student from local funds which shall be no less than the average current expense expenditures per student from local funds throughout the State, as determined by the latest certification of the State Superintendent of Public Instruction."

It was stipulated below: "Under G.S. 115-93 the treasurer of each county and city board of education must report to the State Superintendent of Public Instruction on the first Monday of August of each year the entire amount of money received and disbursed by him during the preceding fiscal year. These reports are made on blanks furnished by the office of the State Superintendent. These reports require information as to the amount of money expended for current expense expenditures in the particular school unit.

"Upon receipt of the required reports by the office of the State Superintendent, tabulations are made by school systems and by State totals. From tabulating these figures, the State Superintendent can then certify the average current expense expenditures per student from local funds throughout the State."

The appellant contends that the foregoing method of ascertaining the average student expense constitutes an unlawful delegation of discretionary power to the State Superintendent of Public Instruction and vitiates the discretionary authority vested in the board of county commissioners by G.S. 115-80.

We do not construe G.S. 115-93 as giving to the State Superintendent of Public Instruction any discretionary power in connection with ascertaining the average current expense expenditures per student from local funds throughout the State. It is a matter of tabulating and certifying to the local units the facts as found from the reports submitted to him by the local units.

In the case of *Pue v. Hood, Comr. of Banks,* 222 N.C. 310, 22 S.E. 2d 896, Barnhill, J., later C. J., speaking for the Court, said: "While the

Legislature cannot delegate its power to make a law it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend which cannot be known to the law-making power, and must, therefore, be a subject of inquiry and determination outside the halls of legislation. *Field v. Clark,* 143 U.S. 649, 36 L. Ed. 294; *Provision Co. v. Daves,* 190 N.C. 7, 128 S.E. 593; *Meador v. Thomas,* 205 N.C. 142, 170 S.E. 110; *Cox v. Kinston, supra* (217 N.C. 391, 8 S.E. 2d 252).

" 'The mere fact that an officer is required by law to inquire into the existence of certain facts and to apply the law thereto in order to determine what his official conduct shall be and the fact that these acts may affect private rights do not constitute an exercise of judicial powers. Accordingly, a statute may give to nonjudicial officers the power to declare the existence of facts which call into operation its provisions and, similarly, may grant to commissioners and other subordinate officers power to ascertain and determine appropriate facts as a basis for procedure in the enforcement of particular laws.' 11 Am. Jur. 950; *Cox v. Kinston, supra.*" See *In re Annexation Ordinances,* 253 N.C. 637, 117 S.E. 2d 795; *Redevelopment Commission v. Bank,* 252 N.C. 595, 114 S.E. 2d 688; *Williamson v. Snow,* 239 N.C. 493, 80 S.E. 2d 262. *Cf. Coastal Highway v. Turnpike Authority,* 237 N.C. 52, 74 S.E. 2d 310.

The minimum levy required under the Act involved is for the purpose of providing the necessary funds to cover the current expense budget and funds for vocational subjects, except those funds approved for such units in the State budget. There is no contention, evidence tending to show, or finding that the average current expenditure per student in the State is excessive or that it has exceeded in past years the amount levied for this purpose by the Commissioners of Scotland County pursuant to the mandatory levy required for such purposes by G.S. 115-80. Moreover, this minimum levy has been approved by the voters of Scotland County and, therefore, it is constitutionally unassailable. This assignment of error is also overruled.

The appellant assigns as error the failure of the court below to hold that the Board of County Commissioners of Scotland County was without authority to adopt a bond order or ordinance authorizing the issuance of bonds in the total principal amount which exceeded the limitation fixed by G.S. 153-87.

According to the financial statement of Scotland County, filed in connection with the passage of the bond ordinance involved herein as

required by G.S. 153-84, the assessed valuation of taxable property in Scotland County as last fixed for county taxation, was $43,128,260. The outstanding school debt on 8 April 1964 was $1,285,000. The total outstanding school debt, including the proposed bond issue, amounted to $3,035,000. Five per cent of the total assessed value is $2,156,413. The outstanding bonds and the proposed issue amount to $878,587 over and above the five per cent limitation fixed in G.S. 153-87. However, Chapter 1220 of the North Carolina Session Laws of 1959 authorizes the Board of County Commissioners of Scotland County to issue school bonds pursuant to the County Finance Act up to $975,000, notwithstanding the limitation contained in G.S. 153-87. Section 2 of this Act reads as follows: "That the powers granted by this Act are in addition to and not in substitution for any other powers heretofore or hereafter granted to said county."

Furthermore, it was stipulated by the parties in the hearing below, "That Chapter 1220, Session Laws of 1959, was obtained for the purpose of exceeding the debt limitations in G.S. 153-87 by adding to the amount available under the general law, up to $975,000 in addition to any other school debt the county could incur under the general law; and that the County Commissioners had sought such legislation in 1959 because the merger of the City and County school systems was being considered."

In our opinion, the Board of Commissioners of Scotland County was authorized to pass the bond ordinance providing for the issuance of school bonds in the sum of $1,750,000, subject to the approval of the voters of Scotland County. We hold that Chapter 1220 of the Session Laws of 1959 authorized the Board of Commissioners of Scotland County to issue school bonds up to but not in excess of $875,000 over and above the limitation prescribed in G.S. 153-87. The authorized school bond issue of $1,750,000 is within the limitation provided in G.S. 153-87 and Chapter 1220, Session Laws of 1959. This assignment of error is likewise overruled.

No attack is made on the validity of the election in which all four of the proposals submitted were approved.

The appellant took no exception to any finding of fact, nor did he request the finding of any specific fact or facts. The only exception entered in the hearing below, according to the record, was to the judgment from which appeal was taken. However, since the validity of bonds is involved, as well as the levy and collection of taxes, we have considered the pertinent questions sought to be raised by the assignments of error. No prejudicial error has been shown.

The judgment entered below is

Affirmed.