DON FLOYD, ERIC PREVATTE AND THE CLYBOURN PINES-COUNTRY CLUB CITIZENS ASSOCIATION v. THE LUMBERTON CITY BOARD OF EDUCATION, THE ROBESON COUNTY BOARD OF EDUCATION, AND RUFUS L. EDMISTEN, ATTORNEY GENERAL OF NORTH CAROLINA

No. 8316SC1295

(Filed 18 December 1984)

1. Statutes § 2.1— local act

An act which operated in Robeson County alone was a local act.

2. Statutes § 2.7; Schools § 3— de-annexation from school administrative unit—constitutionality of local act

Chapter 1248 of the 1981 Session Laws, which provided a means whereby the Clybourn Pines area of Robeson County could be de-annexed from the Lumberton City Administrative Unit and returned to the Robeson County Administrative Unit by joint action of the city and county boards of education, did not violate the prohibition of Art. II, § 24(1)(h) of the N.C. Constitution against local acts establishing or changing lines of school districts since (1) the

Floyd v. Lumberton Bd. of Education

affected areas are administrative units rather than "school districts" and thus fall outside the purview of Art. II, § 24(1)(h) and (2) even if the lines of school districts were involved, the act constituted enabling legislation and did not "establish or change" such lines within the purview of Art. II, § 24(1)(h). G.S. 115C-70(a).

**3. Statutes § 2.7— abrogation of special school supplemental tax—constitutionality of local act**

A local act which abrogated a former act levying a special school supplemental tax in effect repealed a local act, not the general law of G.S. 115C-501 *et seq.*, and thus did not violate Art. II, § 24(2) or Art. XIV, § 3 of the N.C. Constitution.

**4. Schools § 3— de-annexation of area from City Administrative Unit—statutes not violated**

The action of city and county boards of education in de-annexing an area from the city administrative unit pursuant to Ch. 1248 of the 1981 Session Laws did not usurp the authority of the State Board of Education under G.S. 115C-70; nor did such action violate the statute dealing with merger of administrative units in the same county, G.S. 115C-67, or the statute relating to the abolishment of special taxes upon the merger or reorganization of administrative units by the State Board of Education, G.S. 115C-12(7).

**5. Schools § 10— tuition for persons not residing in administrative unit**

It was permissible under G.S. 115C-366.1(a)(2) to assess a tuition against residents of a county administrative unit who attended schools in the city administrative unit.

APPEAL by plaintiffs from *Clark, Judge.* Judgment entered 26 August 1983 in Superior Court, ROBESON County. Heard in the Court of Appeals 26 September 1984.

Plaintiffs are residents of and property owners in the Clybourn Pines-Country Club area of Robeson County who have children of school age. They filed this class action against defendant boards of education and the Attorney General of North Carolina. Plaintiffs sought to have Chapter 1248 of the 1981 North Carolina Session Laws and the implementation of that act declared unconstitutional or otherwise illegal, and further sought temporary and permanent injunctive relief restraining defendant boards of education from implementing the act.

At the outset, we clarify the nomenclature of the various groups involved in this action. Both city and county boards of education are established pursuant to G.S. 115C-40. Boards of education are the governing boards of public schools within the school administrative unit (also referred to simply as "administrative

unit") within a particular city or county. G.S. 115C-5(b) and (c); G.S. 115C-66. In this case, then, the Lumberton City Administrative Unit (hereinafter "City Unit") is under the control of the defendant Lumberton City Board of Education (hereinafter "City Board"), and the Robeson County Administration Unit (hereinafter "County Unit") is under the control of the defendant Robeson County Board of Education ("County Board").

We next set out the factual and procedural history of the litigation. For about a decade beginning around 1960, students from the Clybourn Pines-Country Club area (hereinafter "Clybourn Pines" or "Clybourn Pines area") attended the public schools of the City Unit apparently through an informal, unwritten arrangement. This arrangement was formalized by legislation enacted in 1969. Chapter 611 of the 1969 Session Laws provided a mechanism for the transfer, or annexation, of Clybourn Pines from the County Unit to the City Unit. The procedure for annexation was utilized, and Clybourn Pines children continued to attend Lumberton City public schools. A special school supplemental tax was levied against property owners in the Clybourn Pines area.

In June 1982, the General Assembly enacted Chapter 1248 of the 1981 Session Laws, which act provided a means by which Clybourn Pines could be de-annexed and transferred to the County Unit by joint action of the County Board and the City Board. The reason for the enactment of Chapter 1248 was to remove an objection posed by the United States Department of Justice that the administrative units, as then configured, were in violation of the Voting Rights Act of 1965. Shortly after ratification of Chapter 1248, Clybourn Pines was de-annexed pursuant to its provisions. On 23 August 1982, plaintiffs filed suit contesting the constitutionality of Chapter 1248, and the defendants' implementation of that legislation.

Plaintiffs were initially denied temporary injunctive relief. The case was tried without a jury, and the trial court concluded that the act and the implementation thereof were neither unconstitutional nor otherwise unlawful. Plaintiffs appeal.

*Reid, Lewis & Deese, by Renny W. Deese, for plaintiff appellants.*

*Teague, Campbell, Conely & Dennis, by John W. Campbell, for defendant Lumberton City Board of Education.*

*Ward, Strickland & Kinlaw, by Earl H. Strickland, for defendant Robeson County Board of Education.*

*Edwin M. Speas, Jr., Special Deputy Attorney General, for defendant Rufus L. Edmisten.*

EAGLES, Judge.

The two arguments raised by plaintiffs on this appeal are that the trial court committed reversible error by failing to declare Chapter 1248 was unconstitutional or otherwise illegal, and that it erred in declaring that the implementation of the act was not unconstitutional or illegal.

I

The crux of plaintiffs' argument is that the legislation is unconstitutional in that it violates Article II, section 24(1)(h) of the North Carolina Constitution. That section provides, in pertinent part, that: "The General Assembly shall not enact any local, private, or special act or resolution . . . establishing or changing the lines of school districts." *See also* G.S. 115C-70(a), to the same effect. Plaintiffs' position is simply that Chapter 1248 is void because it is a local act changing the lines of school districts. Defendants' contention, adopted by the trial court, is that Chapter 1248 is "enabling legislation" and therefore a proper exercise of legislative authority under Article II, section 24. Our analysis of the constitutionality of Chapter 1248 is composed of three consecutive questions: (1) Is it a *local* act? (2) Does it involve *school districts*? (3) Does it *establish or change* any boundary lines?

A

[1]  That Chapter 1248 is a local act, neither party disputes. A local act is one that applies to fewer than all counties without rational distinction between the included and excluded counties in relation to the purpose of the act. *Smith v. County of Mecklenburg*, 280 N.C. 497, 187 S.E. 2d 67 (1972). *Accord, Idol v. Street*, 233 N.C. 730, 65 S.E. 2d 313 (1951) (local act operates only in limited territory or specified area). The act in question operates in Robeson County alone and is thus a local, rather than a general, act.

[2]  We next examine whether the areas affected by Chapter 1248 are "school districts," as plaintiffs maintain they are. Defendants' contention is that the affected areas are administrative units, rather than school districts, and thus fall outside the purview of Article II, section 24.

In *Hobbs v. Moore County*, 267 N.C. 665, 149 S.E. 2d 1 (1966) the Supreme Court was confronted with an issue similar to the one before us: whether a local act authorizing the merger of three school systems violated Article II, section 29. In an opinion upholding the constitutionality of the legislation, the Court defined "school district," contrasting it with the term "administrative unit":

> [A] "school district" is an area within a county in which one or more public schools must be maintained. It is so defined in G.S. § 115-7 [currently G.S. 115C-69]. The three areas established by the present statutes are not "school districts." . . . [T]hese areas are "for the purpose of representation on the Boards of Education." These "areas" relate to the residence of members of the Board of Education, not to the location of schools. *An "administrative unit" is not a "school district" within the meaning of Article II, Section 29* [currently Article II, section 24].

*Id.* at 675, 149 S.E. 2d at 8 (emphasis added). *See also* G.S. 115C-70 (empowering State Board of Education to create school districts). G.S. 115C-69, the current enactment of the statute referred to in *Hobbs*, provides:

> The term "district" here used is defined to mean any convenient territorial division or subdivision of a county, created for the purpose of maintaining within its boundaries one or more public schools. It may include one or more incorporated towns or cities, or parts thereof, or one or more townships, or parts thereof, all of which territory is included in a common boundary.

"Administrative unit" is also defined by statute:

> "Local school administrative unit" means a subdivision of the public school system which is governed by a local board of education. It may be a city school administrative unit, a coun-

ty school administrative unit, or a city-county school administrative unit.

G.S. 115C-5(f). *See also* G.S. 115C-66 (administrative units under supervision and control of boards of education).

It is evident that the effect of the quoted language of *Hobbs, supra,* and the pertinent sections of Chapter 115C is the promulgation of a narrow, specific definition of "school district." Applying the definition to the case at hand, it is equally evident that the de-annexation authorized by Chapter 1248 did not involve school districts, but administrative units. The act does not refer to "school districts"; it refers only to the "Lumberton City School Administrative Unit" and the "Robeson County School Administrative Unit." The act also provides that the transfer of the Clybourn Pines area between units can only be accomplished through the mutual agreement of the city and county boards of education, making it clear that the entities involved are "under the general supervision and control" of a board or boards of education, which comports with the statutory definition of administrative unit. G.S. 115C-66.

There is some indication that the Lumberton City School District and the Lumberton City Administrative Unit cover the same area; *e.g.,* the parties stipulated that "The Lumberton City School District and the Lumberton Administrative Unit are one and the same in territorial extent and jurisdictional authority." The fact that the Lumberton school district and the Lumberton administrative area might cover the same area does not render the legislation unconstitutional, however. The Supreme Court has held that local legislation enacted to change a boundary line that happens to be coterminous with a school district line does not offend Article II, section 24. *Hailey v. Winston-Salem,* 196 N.C. 17, 144 S.E. 377 (1928) involved an act which, in part, made the corporate limits of Winston-Salem coterminous with the boundary lines of a school district. The Court reasoned:

> We regard it as obvious that the incorporation of the City of Winston-Salem is not synonymous with the creation of a school district within the meaning of [Art. II, § 24]. . . . It is true that the boundaries of a "district" may be coterminous with those of a city or town, . . . but it does not follow that an act extending the limits of a city or town in which public

schools may be maintained is necessarily a special act establishing or changing the lines of the school district in violation of the constitutional provision.

*Id.* at 22, 144 S.E. at 380. Similarly, Chapter 1248 is not in violation of Article II, section 24 because its directives, explicitly aimed at administrative units alone, may have affected school district boundaries coterminous with those of the administrative unit.

Turning to the final question of our analysis, we find that even if Chapter 1248 served to alter the lines of school districts, it did not "establish or change" such lines, as we understand those terms. Article II, section 24(1)(h) has been interpreted only to prohibit local legislation which directly results in a change in the lines of school districts. Enabling legislation which describes the procedure by which a change might be accomplished has been consistently held to be constitutional. *Hobbs v. Moore County*, 267 N.C. 665, 149 S.E. 2d 1 (1966); *Peacock v. Scotland County*, 262 N.C. 199, 136 S.E. 2d 612 (1964); *Hinson v. Comrs. of Yadkin*, 218 N.C. 13, 9 S.E. 2d 614 (1940); *Fletcher v. Comrs. of Buncombe*, 218 N.C. 1, 9 S.E. 2d 606 (1940).

The issue of whether enabling legislation violates the constitutional prohibition against local acts establishing or changing the lines of school districts was first considered in *Fletcher, supra*. The Supreme Court stated that although the primary purpose of the act under consideration was to create a taxing district, there was "no need to evade the fact that school districts are thus created, or may be created under the law." Despite the fact the act created school districts, the Court held that as the act in question was merely enabling legislation, it did not violate then Article II, section 29:

> [T]he act in question prescribes a method whereby school districts or special bond tax units may be uniformly established throughout the county. The act itself deals only with the mechanics of establishing or changing the lines of school districts or special bond tax units, and does not, *ex proprio vigore*, undertake to establish or to change any such lines. These are matters which, . . . are committed to the sound discretion of the county board of education. The constitutional prohibition . . . is against direct action on the part of

the General Assembly and not against the establishment of machinery for the accomplishment of these ends.

*Fletcher, supra* at 5, 9 S.E. 2d at 609. *Accord, Hobbs, Hinson, Peacock,* all *supra.* Likewise Chapter 1248 did not effect any modification in the boundary lines between the county and city administrative units; rather, it only established the procedure by which de-annexation could be accomplished.

Plaintiffs further suggest that the procedure for de-annexation contained in the act, namely, public notice, a public hearing, and resolutions by the city and county boards respectively, is not sufficiently elaborate to withstand constitutional challenge. This argument is not persuasive. Not only does the language in the four cases cited give no indication of any intent to discriminate among types of procedures in these cases, the mechanism for de-annexation contained in Chapter 1248 is substantially similar to that in *Fletcher* and *Hinson, supra.*

We note that our result here is compatible with principles of construction by which constitutionality of legislation is measured. First, a presumption exists that a statute is valid, *Assurance Co. v. Gold, Comr. of Insurance,* 249 N.C. 461, 106 S.E. 2d 875 (1959), and that any reasonable doubt as to constitutionality will be resolved in favor of the statute. *Gardner v. Reidsville,* 269 N.C. 581, 594, 153 S.E. 2d 139, 150 (1967). This presumption of constitutionality has been specifically applied to Article II, section 24. *Id.*

Furthermore, when construction of a constitutional provision is at issue, as here, it is incumbent upon us to interpret it in accordance with the intent of its framers and the citizens who adopted it, by inquiring into its history and the purposes sought to be accomplished by its enactment. *Sneed v. Board of Education,* 299 N.C. 609, 613, 264 S.E. 2d 106, 110 (1980). Such an inquiry has been made into Article II, section 24. In *Surplus Co. v. Pleasants, Sheriff,* 264 N.C. 650, 142 S.E. 2d 697 (1965), the Supreme Court noted that in the years preceding the adoption of Article II, section 29 (currently Article II, section 24), the vast majority of the laws passed were local, private or special acts, and that Article II, section 29 was intended to remedy this situation:

It was the purpose of the Amendment to free the General Assembly from the enormous amount of petty detail which had been occupying its attention, to enable it to devote more time and attention to general legislation of statewide interest and concern, [and] to strengthen local self government by providing for the delegation of local matters by *general laws* to local authorities. . . .

*Id.* at 656, 142 S.E. 2d at 702. *See also Board of Health v. Comrs. of Nash,* 220 N.C. 140, 16 S.E. 2d 677 (1941) (application of former Article II, section 29 should not be denied on any insubstantial distinction which would defeat its purpose).

Not only is our result in line with these principles, any other result would require that we ignore a fundamental flaw in plaintiffs' position. The plaintiffs have nowhere suggested or argued that the 1969 annexation of Clybourn Pines, accomplished by local legislation, was improper or unconstitutional. To the contrary, that the annexation of Clybourn Pines was constitutional has been at the heart of plaintiffs' position throughout these proceedings. If we were to accept plaintiffs' proposition that the de-annexation was unconstitutional then so, too, was the annexation, since it was accomplished in the same manner. If the original annexation was achieved unconstitutionally, then all Chapter 1248 does is restore the *status quo,* in which Clybourn Pines was part of the county administrative unit. Put another way, plaintiffs' position leads us ultimately to the same result we have reached here: that Clybourn Pines is lawfully a part of the Robeson County administrative unit.

B

[3] Plaintiffs next contend that the abrogation of the special school supplemental tax in Chapter 1248 is unconstitutional, in that Article II, section 24(2) forbids the General Assembly to enact local legislation by partly repealing a general law. They also direct our attention to Article XIV, section 3 of the North Carolina Constitution, which provides in pertinent part that repeal of any law that is required to be enacted as a general law, must also be by general law. Plaintiffs then cite G.S. 115C-501, *et seq.,* as the general law under which they claim the supplemental tax originated, and argue that Chapter 1248 was a local act which impermissibly repealed general law.

Plaintiffs are incorrect in their analysis. Although the special school tax might have been authorized by utilizing the voter approval mechanism of G.S. 115C-501, *et seq.*, any act actually levying such a tax would plainly be local, and not general, in nature. Thus, insofar as Chapter 1248, a local act, repealed a former act levying the supplemental tax by abrogating the tax, it repealed a local act. Chapter 1248 does not have the effect of repealing the general law of G.S. 115C-501, *et seq.*

II

[4] Plaintiffs' second argument is that the trial court erred in declaring that the *implementation* of Chapter 1248 by the boards of education was not unconstitutional or otherwise illegal. In support thereof, plaintiffs first cite several General Statutes sections that they claim were violated. Although we are not convinced that these alleged statutory violations are properly argued under an assignment of error concerned with the actual implementation of the act, we nonetheless consider them here. Plaintiffs initially contend that G.S. 115C-67 furnishes legal endorsement for the original annexation of the Clybourn Pines area. G.S. 115C-67 deals only with merger of administrative units in the same county, and merger is not an issue here. Furthermore, whether the annexation was accomplished legally is an issue distinct from and irrelevant to the legality of the de-annexation. Next, plaintiffs cite G.S. 115C-70, which provides that school districts may be created or modified exclusively by action of the State Board of Education. It is only necessary to reiterate our conclusion that Chapter 1248 does not establish or change, and hence does not create or modify, school district lines. The action of the city and county boards in de-annexing Clybourn Pines did not, therefore, usurp the statutory authority of the State Board of Education.

Plaintiffs also seem to suggest that G.S. 115C-12(7) has been violated. This statute provides in part that merger or reorganization of administrative units by the State Board of Education shall not "have the effect of abolishing any special taxes that may have been voted in any such units." Citation to this statute is inapposite. The change in school administrative units here was not a merger or reorganization and was not accomplished by the State Board of Education; it was effected by legal action of the city and county boards of education.

.

[5] Besides providing a mechanism for de-annexation, Chapter 1248 "empowered and authorized" the city and county boards to assess reasonable tuition against Clybourn Pines students. Plaintiffs contend that the consequent imposition of tuition on the Clybourn Pines residents violated G.S. 115C-366.1(a)(2), which provides that "[l]ocal boards of education may charge tuition to . . . [p]ersons of school age who are domiciliaries of the State but who do not reside within the school administrative unit or district." Contrary to plaintiffs' contention, tuition charges assessed against Clybourn Pines students were consistent with G.S. 115C-366.1 (a)(2). Pursuant to Chapter 1248, Clybourn Pines was transferred to the Robeson County School Administrative Unit effective 1 July 1982 upon the adoption of resolutions by the city and county boards. Tuition was assessed against Clybourn Pines students attending public schools located in the Lumberton City Administrative Unit during the school year 1982-83, with special provisions for hardship cases. As of 1 July 1982, Clybourn Pines students were residents of the county administrative unit, not the city unit, and it was permissible to charge them tuition for attending city schools, *i.e.*, schools within the unit where they were not residents.

Finally, plaintiffs contend that the assignment plan for the students never really received mutual approval from the boards of education, and that the transfer of students into the Robeson County Unit was not "orderly" as directed by Chapter 1248. Our examination of the record satisfies us that each board of education adopted a valid resolution de-annexing Clybourn Pines; we are further satisfied that the transfer of students was accomplished in good faith.

Affirmed.

Judges WEBB and BRASWELL concur.