JAMES D. HOBBS AND JOHN C. GRIER, JR., ON BEHALF OF THEMSELVES AND ALL OTHER CITIZENS AND TAXPAYERS OF MOORE COUNTY v. COUNTY OF MOORE AND JOHN M. CURRIE, W. LYNN MARTIN, J. M. PLEASANTS, W. SIDNEY TAYLOR AND WILEY PURVIS, CONSTITUTING THE BOARD OF COUNTY COMMISSIONERS OF MOORE COUNTY, S. C. RIDDLE, J. HUBERT McCASKILL AND COY S. LEWIS, SR., CONSTITUTING THE MOORE COUNTY BOARD OF ELECTIONS; AND T. WADE BRUTON, ATTORNEY GENERAL OF THE STATE OF NORTH CAROLINA.

(Filed 6 July, 1966.)

**1. Statutes § 3—**

A statute which is so loosely and obscurely drawn as to be incapable of enforcement is void; but a statute is presumed to have meaning and will be upheld if its meaning is ascertainable with reasonable certainty by proper construction.

**2. Statutes § 4—**

A statute will not be declared unconstitutional unless it is clearly so.

3. **Statutes § 5—**

   Where a statute is susceptible of two interpretations, one constitutional and the other unconstitutional, the former will be adopted; the language of a statute will be interpreted so as to avoid an absurd consequence.

4. **Statutes § 11—**

   Where there is a conflict between a general statute and a subsequently enacted local statute, the local act prevails in the area where it is intended to apply.

5. **Statutes § 5—**

   In ascertaining the intent of the General Assembly, the terms of a statute will be construed in the light of related statutes then existing, which must be deemed to have been known to, and considered by, the General Assembly.

6. **Schools §§ 3, 7—**

   Chapter 1051 of the Session Laws of 1965, providing for the holding of an election in a designated county to determine whether school administrative units in the county should be merged, for the appointment and election of members of the county board of education if the merger was approved, and whether the county commissioners should be authorized to levy a county-wide school supplemental tax not to exceed an annual rate of 30 cents per 100 dollars of assessed property valuation, *held* susceptible to definite interpretation and therefore not void for ambiguity or indefiniteness.

7. **Statutes § 2—**

   A school administrative unit is not a school district within the meaning of Art. II, § 29 of the North Carolina Constitution, and an Act providing for the merger of two or more school administrative units in a county upon the assent of the county commissioners, and the approval of the merger by a majority of the voters participating in the election, does not violate this section of the Constitution.

8. **Constitutional Law § 20—**

   A statute requiring that one member of a newly constituted board of education should be appointed from each of the five districts theretofore established by law and that two other members of the board of education should be appointed from the county at large, and that such members should serve until their successors, subject to the same geographical limitations, are elected and qualified, the election of all such members to be by vote of the county as a whole, does not offend the Equal Protection Clause of the Fourteenth Amendment of the Federal Constitution.

9. **Public Officers § 5—**

   A statute specifying that one member of a new county board of education must be appointed from the members of the existing county board of education and a designated county administrative unit, does not offend the constitutional proscription against dual office holding, Constitution of North Carolina Art. XIV, § 7, there being no provision in the statute that those selected from the sources stipulated and accepting the appointment by taking the oath of office should continue to hold their former offices.

**10. Statutes § 4—**

A statute may be constitutional in part and unconstitutional in part, and if the unconstitutional provisions are separate and the statute, with such sections omitted, constitutes a complete statute capable of being executed in accordance with the apparent legislative intent, the invalid part may be rejected and the valid part may stand.

**11. Schools § 9;   Constitutional Law § 4—**

Provisions of a statute giving school authorities permissive power to acquire a school site up to 75 acres by gift, purchase or condemnation will not be held void as being in violation of G.S. 115-125 in an action by plaintiffs who do not assert that any property owned by them, or any member of the class they purport to represent, is about to be condemned or, indeed, that any property is to be condemned under the statute. Further, the statute attacked was a special statute enacted after the general statute proscribing the condemnation of a site in excess of 30 acres.

**12. Appeal and Error § 6—**

The Supreme Court on appeal from judgment sustaining the validity of the statute attacked will not determine questions not adjudicated in the court below and which are not necessary to the determination of the correctness of the judgment appealed from.

**13. Taxation § 12—**

Where there is no evidence to support any finding of intent by the school authorities to use the proceeds of a bond issue for purposes not authorized by the bond order, the question is not presented for determination.

**14. Appeal and Error § 38—**

Assignments of error not brought forward in appellants' brief and in support of which no argument is had nor authorities cited, are deemed abandoned.

MOORE, J., not sitting.

APPEAL by plaintiffs from *Gambill, J.,* January 1966 Civil Session of MOORE.

The plaintiffs are citizens and taxpayers of Moore County, and residents of the Southern Pines School Administrative Unit and the Pinehurst School Administrative Unit, respectively. They brought this suit for a determination that Chapter 1051 of the Session Laws of 1965 is unconstitutional and void, and for the issuance of an injunction enjoining the defendants from proceeding with the holding of an election pursuant to such Act and from doing or performing any other act or thing pursuant thereto. They sought a temporary restraining order to prevent the holding of the election provided for under the Act, but this was denied and the election was held.

Thereafter, the matter came on for final hearing before the judge, without a jury, it being stipulated that the court might find the

facts, enter its conclusions of law, and render judgment upon the basis of the pleadings and the stipulations of the parties. Upon such hearing, the court below entered its judgment, reciting findings of fact and conclusions of law. It adjudged the Act constitutional, ruled that the members of the Moore County Board of Education, appointed pursuant to the Act, were duly appointed, qualified and acting, denied the injunctive relief prayed for and ordered the action retired from the civil issue docket, the plaintiffs to pay the cost.

From this judgment the plaintiffs appeal, assigning a large number of alleged errors.

The Act in question was adopted by the General Assembly on 14 June 1965. At that time, the county was divided into three School Administrative Units — Southern Pines, Pinehurst, and the Moore County Administrative Unit, the last including all of the county except the areas within the two city units. For many years prior to 1 April 1965, the Moore County School Administrative Unit included thirteen school attendance districts, nine with reference to the schools attended by white children and four with reference to schools attended by Negro children, the four overlapping and including all the area included in the nine. These school attendance districts had been created by the State Board of Education, from time to time, at the request of the then Moore County Board of Education. On 1 April 1965, acting upon the petition of the then Moore County Board of Education, the State Board of Education abolished all county school districts previously established in the Moore County School Administrative Unit, so that on and after 1 April 1965, there was only one school attendance district in the Moore County Administrative Unit.

Prior to the passage of the Act in question, a valid school supplement tax was levied and collected upon property within the Southern Pines School Administrative Unit, pursuant to the vote of the people therein in elections held in prior years. Similarly, a valid school supplement tax was in effect, levied and collected upon property in the Pinehurst School Administrative Unit. School supplement taxes were also then in effect, levied and collected upon property in the Aberdeen School District and in the West End School District, these districts being within the Moore County School Administrative Unit. There was no school supplement tax in effect in any other district of that unit. The rates of these school supplement taxes varied as between the several units or districts.

On or about 23 August 1963, bonds were issued, pursuant to a bond order adopted by the County Board of Commissioners, in the total amount of Three Million Dollars, for the erection in each of

the three administrative units of various new school buildings and additions to and improvements of existing school buildings. The bond order provided that, of the total, $2,195,700 "shall be used to finance the cost of erecting such new buildings or reconstructing or enlarging such existing buildings in the Moore County School Administrative Unit or to finance the cost of acquiring lands or furnishings or equipment necessary for such purposes," $249,600 "shall be used" for such purposes in the Pinehurst City School Administrative Unit, and $554,700 "shall be used" for such purposes in the Southern Pines City School Administrative Unit. The order also provided for the annual levy and collecting of a tax sufficient to pay the principal of and interest on such bonds. The order was to take effect when approved by the voters of the county at an election, which was held and at which the bond issue was approved.

In 1943 the General Assembly adopted "an Act creating five districts for the nomination of members of the Board of Education of Moore County." Chapter 76 of the Session Laws of 1943.

A summary of the Act of 1965, Chapter 1051 of the Session Laws of 1965, the object of the plaintiffs' attack, is set forth in the opinion. In brief, that Act provided for the holding of an election in Moore County to determine (1) whether the Southern Pines, Pinehurst and Moore County School Administrative Units should be merged, and (2) whether the Board of Commissioners of Moore County should be authorized to levy a county-wide school supplement tax not to exceed the annual rate of thirty cents per one hundred dollars of assessed property valuation. The election was held. The merger was approved by a majority vote. The tax was rejected by a majority vote.

Thereupon, the Board of Commissioners of the County appointed a new Moore County Board of Education, consisting of seven members, one from each of the five districts referred to in the 1943 Statute, including a member of the Board for the County Administrative Unit, and two at large, one of these, at the time of appointment to the new County Board of Education, being a member of the Board of Education for the Pinehurst Administrative Unit and the other being a member of the Board of Education for the Southern Pines Administrative Unit. These seven members thereupon took their oaths of office as members of the Moore County Board of Education. This seven member Board thereupon elected its chairman from its membership.

The Moore County Administrative Unit has $717,000, remaining from its share of the proceeds of the 1963 bond issue, plus $613,000, allotted to it from State funds, making a total of $1,330,000 now in its hands available for school building construction. Within

the past two years it constructed two high schools in the northern part of the county, each adequate to accommodate 900 students, and each costing approximately $1,300,000. The Pinehurst and Southern Pines Administrative Units have substantial funds remaining from their respective shares of the bond issue and of the allotment of State funds. The funds so available to the Moore County Administrative Unit would be sufficient to construct a high school building, adequate to accommodate all high school pupils residing within the area of that unit and not presently accommodated at the other two new high school buildings and those funds, plus the funds so remaining in the hands of the Pinehurst and Southern Pines Units, would be sufficient to construct a consolidated high school building, adequate to take care of the high school pupils from those units as well, according to the evidence offered by the defendants.

The substance of the plaintiffs' complaint is that, Chapter 1051, Session Laws of 1965, is "invalid, unconstitutional, and void" because: (1) Its provisions for the appointment and election of the members of the new County Board of Education are vague and meaningless so that they cannot be carried into effect; (2) the residents of the Pinehurst and Southern Pines Administrative Units are not afforded representation on the new Board comparable to that afforded the residents of the area of the Moore County School Administrative Unit; (3) the Act provides authority in the Board to condemn a site for a new high school extending to a total of 75 acres, which is contrary to the general law contained in G.S. 115-125; (4) the provisions of the Act for the continuation of school supplement taxes, heretofore authorized, constitute an unlawful, unequal and unconstitutional taxation of the residents of the areas in which such taxes were previously adopted; (5) the Act violates Article II, Section 29, of the North Carolina Constitution in that it is a special or local act establishing a school district or changing the lines thereof; (6) the provision requiring that one member of the Board of Education of each of the existing administrative units be a member of the new County Board of Education violates the provisions of Article XIV, Section 7, of the North Carolina Constitution relating to dual office holding; and (7) the newly constituted County Board of Education does not have sufficient funds to build an adequate consolidated high school as directed in the Act and intends, unlawfully, to use proceeds of the 1963 bond issue for such purpose. The answer alleges that the defendants have available sufficient funds for the implementation of all provisions of the 1965 Act with reference to the construction of schools.

*Smith, Leach, Anderson & Dorsett by Henry A. Mitchell, Jr., and Pollock & Fullenwider by R. F. Hoke Pollock for plaintiff appellants.*

*Boyette and Brogden and William D. Sabiston, Jr., for defendant appellees.*

LAKE, J. The first step in the solution of this matter is to construe the 1965 Act, Chapter 1051 of the Session Laws of 1965. It is well established that an act of the General Assembly must be held void if it is so loosely and obscurely drawn as to be incapable of enforcement. *State v. Morrison,* 210 N.C. 117, 185 S.E. 674; *State v. Partlow,* 91 N.C. 550; *Drake v. Drake,* 15 N.C. 110. In the *Drake* case, Ruffin, C.J., said:

> "Whether a statute be a public or a private one, if the terms in which it is couched be so vague as to convey no definite meaning to those whose duty it is to execute it, either ministerially or judicially, it is necessarily inoperative. The law must remain as it was, unless that which professes to change it, be itself intelligible."

However, as was said in *State v. Partlow, supra,* "It is plainly the duty of the court to so construe a statute, ambiguous in its meaning, as to give effect to the legislative intent, if this be practicable." It is also well established that this Court will not adjudge an act of the General Assembly unconstitutional unless it is clearly so. *Kornegay v. Goldsboro,* 180 N.C. 441, 105 S.E. 187. Where a statute is susceptible of two interpretations, one of which will render it constitutional and the other will render it unconstitutional, the former will be adopted. *City of Randleman v. Hinshaw,* 267 N.C. 136, 147 S.E. 2d 902; *Finance Co. v. Leonard,* 263 N.C. 167, 139 S.E. 2d 356; *Nesbitt v. Gill,* 227 N.C. 174, 41 S.E. 2d 646. If possible, the language of a statute will be interpreted so as to avoid an absurd consequence. *Young v. Whitehall Co.,* 229 N.C. 360, 49 S.E. 2d 797; *State v. Scales,* 172 N.C. 915, 90 S.E. 439. A statute is never to be construed so as to require an impossibility if that result can be avoided by another fair and reasonable construction of its terms. *Comrs. v. Prudden,* 180 N.C. 496, 105 S.E. 7. "A statute or amendment formally passed is presumed and if permissible should be construed so as to have some meaning." *Mitchell v. R. R.,* 183 N.C. 162, 110 S.E. 859. See also *State v. Humphries,* 210 N.C. 406, 186 S.E. 473. Where there is conflict between a general statute and a local act, subsequently adopted, the local act prevails within the area where it is intended to apply. *Kornegay v. Goldsboro, supra.*

Applying these principles, we turn to the Act in question, Chap-

ter 1051 of the Session Laws of 1965. It is lengthy and by no means free from ambiguity. Nevertheless, its meaning can be ascertained from its own terms read in the light of existing statutes which must be deemed to have been known to and considered by the General Assembly. Omitting those provisions which, by the terms of the Act, itself, were to take effect only if the voters approved the county-wide school supplement tax, which tax they rejected, passing over those provisions which are not germane to the controversy before us, using our own numbering of its provisions, and quoting the exact language only as indicated, we construe this statute to mean:

(1)   The Board of County Commissioners may, at a date in 1965, to be fixed by them, cause to be held in Moore County an election on the issue of whether Southern Pines, Pinehurst and Moore County Administration Units shall be merged into a "single county administrative unit," and a special supplemental school tax levied on all property in the county at a rate not to exceed thirty cents per one hundred dollars of assessed value.

(2)   In the event that the majority vote shall be in favor of the merger of the three administrative units, the Board of County Commissioners shall appoint a new County Board of Education consisting of seven members.

(3)   One member of the new Board shall be appointed from each of the five districts established by Chapter 76 of the Session Laws of 1943, as amended by the Session Laws of 1957 and the Session Laws of 1959, and the other two members shall be appointed from the county at large.

(4)   Of the seven members so appointed, one shall be appointed from the membership of the Board of Education of the Moore County Administrative Unit as of 14 June 1965, one shall be appointed from the membership of the Board of Education of the Southern Pines Administrative Unit as of that date, and one shall be appointed from the membership of the Board of Education of the Pinehurst Administrative Unit as of that date.

(5)   The seven members of the newly appointed Moore County Board of Education shall qualify for office within seven days after their appointment.

(6)   The new Moore County Board of Education, so constituted, shall thereupon have jurisdiction and control over and the duty of administering the public schools of the Moore County Administrative Unit until 30 June 1967, at which time such Board shall assume jurisdiction over and control and ad-

minister all of the public schools of Moore County, including those located within the present area of the Southern Pines Administrative Unit and those located within the present area of the Pinehurst Administrative Unit.

(7) The Board of Education of the Pinehurst Administrative Unit and the Board of Education of the Southern Pines Administrative Unit shall continue to administer the public school systems of those units until 30 June 1967, on which date the said two Boards of Education shall cease to exist, the terms of their members shall terminate and they shall transfer title to all property vested in them to the new Moore County Board of Education.

(8) The members of the new Moore County Board of Education, so appointed, shall serve until their successors are elected and qualified.

(9) At the time of qualifying for office, the members of the new Moore County Board of Education shall hold the first meeting of the Board and shall elect one of its members as its chairman.

(10) The new Moore County Board of Education, so constituted, shall exercise all powers and have all duties heretofore vested in and imposed upon Boards of Education by the General Statutes of North Carolina, except as changed or modified by this Act.

(11) "For the purpose of representation on the Board of Education, Moore County shall be divided into three areas," described as Area I, Area II and Area III, the territory of each area being specified.

(12) On the first Tuesday in April 1967, and biennially thereafter, the County Board of Elections shall conduct an election of members of the Moore County Board of Education, all qualified voters residing in Moore County being eligible to vote therein, and the election to be nonpartisan.

(13) At the 1967 election, there shall be elected seven members, one of whom shall be a resident of each of the said five districts established by Chapter 76 of the Session Laws of 1943, as amended by the Session Laws of 1957 and the Session Laws of 1959, and the other two shall be elected from the county at large; that is, these two may be residents of any part of Moore County.

(14) At each such election, all members then to be elected shall be voted upon and elected by the voters of the entire county, voting at large.

(15)　The three candidates receiving the largest number of votes at the 1967 election shall be elected for four year terms, the four candidates receiving the next highest number of votes shall be elected for two year terms and in subsequent elections all members, then to be elected, shall be elected to four year terms.

(16)　At any such election, any qualified voter, residing in Moore County and eligible under the provisions of G.S. 115-125, may become a candidate for the Moore County Board of Education upon paying the filing fee of five dollars ($5.00) and filing a notice of candidacy with the Moore County Board of Elections between January 1 and March 1 of the year in which the election is held, such notice of candidacy to state the name of the candidate and the "area" in which he resides (i.e., the district established by Chapter 76 of the Session Laws of 1943, as amended).

(17)　If, in any year in which members of the Moore County Board of education are to be elected, the number of candidates filing as candidates from any district (the entire county being a district with reference to "at large" candidates) exceeds twice the number of members to be elected from such district, a primary election shall be conducted by the Moore County Board of Elections two weeks prior to the regular election, in which primary election all qualified voters residing in the county shall be eligible to vote.

(18)　The two candidates in each such district receiving the highest number of votes in such primary shall be declared nominated as candidates to be voted upon in the regular election to be held two weeks after the primary.

(19)　Vacancies upon the new Moore County Board of Education shall be filled by appointment by the Board of County Commissioners, such appointment to run to the next election of members of the Moore County Board of Education, at which time the vacancy shall be filled by election for the remaining portion of the unexpired term, if any.

(20)　The County Board of Education, so constituted, "shall proceed to consolidate the high schools of the Southern Pines, Pinehurst, West End and Aberdeen Areas and to build and construct a consolidated high school on some convenient site," for which site it may acquire by purchase, gift or condemnation up to 75 acres, such condemnation proceeding, if any, to be conducted in accordance with Chapter 40 of the General Statutes.

(21) "All school district taxes and supplemental taxes heretofore authorized shall continue in full force and effect until and unless modified according to law."

(22) All elections authorized by this Act shall be conducted by the Moore County Board of Elections in accordance with the provisions of Chapter 163 of the General Statutes governing general elections, except that such elections shall be nonpartisan and absentee voting shall not be permitted.

(23) Expenses of all elections shall be paid by the Board of County Commissioners from the county's general fund.

Article II, Section 29, of the Constitution of North Carolina provides:

"The General Assembly shall not pass any local, private, or special act or resolution * * * establishing or changing the lines of school districts * * *"

Article IX, Section 3, of the Constitution provides:

"Each county of the State shall be divided into a convenient number of districts, in which one or more public schools shall be maintained at least six months in every year * * *"

The term "school district" in Article II, Section 29, means a "district" provided for in Article IX, Section 3. That is, a "school district" is an area within a county in which one or more public schools must be maintained. It is so defined in G.S. 115-7. The three areas established by the present statute are not "school districts." The statute declares that these areas are "for the purpose of representation on the Boards of Education." These "Areas" relate to the residence of members of the Board of Education, not to the location of schools. An "administrative unit" is not a "school district" within the meaning of Article II, Section 29. See G.S. 115-4. Consequently, the merger of two or more administrative units is not a changing of school district lines. Even if it were, this Act does not merge administrative units. It provides machinery by which they may be merged. The merger requires both the assent of the Board of County Commissioners to the holding of an election and the approval of the merger by the majority of the voters participating therein. For this reason, also, the Act does not violate Article II, Section 29, of the Constitution of North Carolina. *Peacock v. Scotland County*, 262 N.C. 199, 136 S.E. 2d 612; *Fletcher v. Comrs. of Buncombe*, 218 N.C. 1, 9 S.E. 2d 606.

Having been able to arrive at the above interpretation of the provisions of this Act from the language of the Act, itself, and the provisions of Chapter 76 of the Session Laws of 1943, as amended,

we hold that the Act now before us is not void on the ground of vagueness and uncertainty.

We find no merit in the contention, advanced in the appellants' brief, that this Act violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States as interpreted in *Baker v. Carr*, 369 U.S. 186, 82 S. Ct. 691; *Gray v. Sanders*, 372 U.S. 368, 83 S. Ct. 801; *Reynolds v. Sims*, 377 U.S. 533, 84 S. Ct. 1362. Under this Act, every member of the Board of Education is to be elected by the voters of the entire county voting at large. Since two of the seven members are, themselves, to be "at large" members, it follows that three of the seven members comprising the entire Board may be residents of the same election district referred to in this statute, if the people of the county, voting at large, see fit to elect them.

The appellants contend that this statute provides for dual office holding, forbidden by Article XIV, Section 7, of the Constitution of North Carolina, since it specifies that one member of the new County Board of Education must be appointed from the members of the existing Board of Education of the Moore County Administrative Unit, one from the members of the existing Board of the Southern Pines Administrative Unit and one from the members of the existing Board of the Pinehurst Administrative Unit. This contention is without merit. When such appointee took the oath of office as a member of the newly constituted County Board of Education, his office as a member of the board of the administrative unit was automatically vacated. The provision of the Act in question merely directs the Board of County Commissioners to certain sources from which they are to select appointees to the Moore County Board of Education. The statute does not provide that one selected from such source, and accepting the appointment by taking the oath of office, shall continue to hold his former office. *Harris v. Watson*, 201 N.C. 661, 161 S.E. 215

The plaintiffs do not seek to enjoin the defendants from putting into effect any specific provision of the Act. Their suit is to have the entire Act declared invalid. In addition to the contentions heretofore noted, they assert that it is invalid in its entirety because (1) it contains a provision authorizing condemnation of a school site containing up to 75 acres, whereas G.S. 115-125 provides for the acquisition by condemnation of a school site not to exceed 30 acres; and (2) it provides that school supplement taxes heretofore authorized in certain parts of the county shall continue in effect.

In *Constantian v. Anson County*, 244 N.C. 221, 93 S.E. 2d 163, Bobbitt, J., speaking for the Court, quoted with approval the following statement found in 82 C.J.S., Statutes, § 92:

"A statute may be valid in part and invalid in part. If the parts are independent, or separable, but not otherwise, the invalid part may be rejected and the valid part may stand, provided it is complete in itself and capable of enforcement."

In *Lowery v. School Trustees*, 140 N.C. 33, 52 S.E. 267, Connor, J., speaking for the Cóurt, said:

"* * * If the general scope and purpose of the statute are constitutional, and constitutional means are provided for executing such general purpose, the entire statute will not be declared void, because some one or more of the details prescribed, or minor provisions incorporated, are not in accordance with the Constitution, provided such invalid parts may be eliminated without destroying or materially affecting the general purpose. The rule is thus stated: 'Where the unconstitutional portions are stricken out and that which remains is complete in itself and capable of being executed in accordance with the apparent legislative intent, it must be sustained.' 26 Am. & Eng. Enc. (2 Ed.), 570, in which a large number of illustrative cases are cited. This Court has frequently recognized and enforced the rule."

See also: *Power Co. v. Clay County*, 213 N.C. 698, 97 S.E. 603; *Bank v. Lacy*, 188 N.C. 25, 123 S.E. 475; *R. R. v. Reid*, 187 N.C. 320, 121 S.E. 534; *Comrs. v. Boring*, 175 N.C. 105, 95 S.E. 43.

Even if it should be determined that the provisions of this Act with reference to the authority to condemn a site of 75 acres and with reference to the continuation of school supplement taxes heretofore in effect are invalid, the remaining provisions of the Act are capable of standing alone and of being carried into effect, and there is nothing in this record or appearing upon the face of the Act, itself, to suggest that the General Assembly would not have adopted such remaining provisions had the two here in question been omitted.

It is not necessary for us now to determine, and we do not determine, whether those two provisions of the Act are valid. As to the condemnation of the school site, the plaintiffs do not assert that any property owned by them, or by any member of the class they purport to represent, is about to be condemned. They do not, indeed, assert that any property is to be condemned. The provision of the Act is that the defendants may acquire a site, up to 75 acres, by gift, purchase or condemnation. It is to be noted, furthermore, that the present statute was enacted after the general statute upon which the appellants rely. See *Kornegay v. Goldsboro, supra*. The appellants do not contend that this portion of the Act, in itself, violates any provision of the Constitution of North Carolina.

Likewise, it is not necessary for us now to determine, and we do not determine, whether the provision of the Act for the continuation of school supplement taxes heretofore authorized is valid, or what use may be made of the proceeds of such taxes. To declare the entire Act unconstitutional and void, as the plaintiffs would have us do, would leave in effect the very taxes of which they now complain. This Act makes no change in those taxes, and makes no provision as to the use to be made of the proceeds thereof.

The appellants also contend that the proceeds of the 1963 bond issue allocated to the Pinehurst and Southern Pines Administrative Units cannot be used by the defendants for the construction of the consolidated high school which the statute here in question directs the new Moore County Board of Education to construct. We are not required upon this record to determine that question. The statute does not purport to deal with it. The judgment from which this appeal is taken does not purport to determine it. It contains no finding of fact with reference to any contemplated use of such proceeds of the 1963 bond issue. The allegation of the complaint that the Board does not have sufficient funds with which to build such high school is denied in the answer. The record does not contain evidence sufficient to support a finding of an intent by the defendants to use for such construction that portion of the proceeds of the bonds heretofore allocated to the Pinehurst and Southern Pines Administrative Units. For a recent and thorough discussion of the use of proceeds of a bond issue for the construction of a school other than those contemplated when the bonds were approved by the voters, see *Dilday v. Board of Education, ante* p. 438.

All assignments of error relating to the rulings of the court below on the admissibility of evidence and to the findings of fact made by the court have been abandoned, these not having been brought forward into the appellants' brief and no argument being made or authorities cited therein in support of them. We have, nevertheless, examined all of them and find no basis therein for disturbing the judgment rendered below. We have also considered each assignment of error brought forward into the briefs, including those not specifically discussed in our opinion, and find them without merit.

Affirmed.

MOORE, J., not sitting.