STATE OF NORTH CAROLINA v. GOLDEN A. FRINKS

No. 737SC475

(Filed 29 August 1973)

1. **Indictment and Warrant § 9— parading without permit — reference to statute — sufficiency of warrant**

   Although the warrant charging defendant with parading without a permit did not expressly identify the definitional section of the pertinent ordinance, it did refer to the ordinance as a whole and thereby put defendant on notice of the particular meaning of "parade" as that term was used in the warrant; therefore, the warrant sufficiently expressed the charge against defendant and the trial court properly refused to quash the warrant.

2. **Criminal Law § 77— statement of defendant to police — admissibility**

   Where an officer observed defendant and 75-100 other individuals proceeding along a public street in a manner which obstructed traffic,

it was reasonable for the officer to believe that a misdemeanor was being committed in his presence; hence, defendant's arrest was not illegal, and the officer could properly testify as to statements made to him by defendant.

**3. Constitutional Law § 4— constitutionality of statute — standing to question**

Defendant's failure to attempt to secure the requisite permit for a parade through city streets did not preclude his attacking the constitutionality of the permit requirement.

**4. Constitutional Law § 18— parading — protection under First Amendment**

Parading may constitute a method of expression entitled to First Amendment protection, but reasonable restrictions on the time, place and manner of public parading are permissible when necessary to further significant governmental interests.

**5. Constitutional Law § 18; Statutes § 4— parading without permit — constitutionality of statute — preferred construction of statute**

Where two statutory constructions are possible, the interpretation which will prevent a finding of unconstitutionality should be adopted; therefore, where the contested provisions of the Wilson City Code could be construed to mean that (1) the city manager had unfettered discretion to reject parade permit applications on the basis of his own personal and perhaps subjective determination of which parades in fact threatened the health, safety and morals of the city, or (2) the city manager and city council could only deny a permit when the proposed parade, due to the time for which it was scheduled, its intended route, or the proposed manner of execution, irreconcilably conflicted with public safety and convenience, the second construction was adopted by the court, and the city ordinance was a reasonable regulatory provision which did not constitute an unconstitutional prior restraint on First Amendment rights.

**6. Statutes § 4— allegedly unconstitutional provision — severability from ordinance**

Possible unconstitutionality of a section of a city ordinance regulating parades did not affect defendant's conviction under other sections of the ordinance for parading without a permit since defendant was not charged under the questionable section and since that particular section was severable from the rest of the ordinance.

APPEAL by defendant from *James, Judge,* 5 February 1973 Session of Superior Court held in WILSON County.

On 30 November 1972 at approximately 9:00 p.m., defendant Golden Frinks was arrested for parading without a permit in violation of Sections 141 and 142 of Article VII of the Wilson City Code which provides in pertinent part:

"Sec. 30-140. Definition.

The term 'parade' as used in this article is defined as an assemblage of more than five (5) vehicles or twenty (20) pedestrians in a public procession along the streets and/or sidewalks of the city, but shall not include funeral processions or sight-seeing groups or bands or marching groups proceeding to a point of assembly to participate in a parade. (Ord. No. 0-29-68 Sec. 13.108 11-14-68)

Sec. 30-141. Conformance to article provisions.

It shall be unlawful for any person to initiate, promote or participate in any parade over the streets and/or sidewalks of the city except in conformance with the provisions of this article. (Ord. No. 0-29-68, Sec. 13.109, 11-14-68)

Sec. 30-142. Permit required.

It shall be unlawful for any person to initiate, promote or participate in any parade within the city until a permit therefor has first been secured. (Ord. No. 0-29-68, Sec. 13.110, 11-14-68)

Sec. 30-143. Application for permit.

Parade permits may be obtained from the city manager upon application made in writing at least seventy-two (72) hours before the date on which the parade is to be held, upon application forms furnished by the city manager. (Ord. No. 0-29-68, Sec. 13.110, 11-14-68)

Sec. 30-144. Conditions of issuance.

The city manager shall issue parade permits unless he finds as a fact that the proposed parade will be contrary to the health, welfare, safety, and morals of the city. (Ord. No. 0-29-68, Sec. 13.111, 11-14-68)

Sec. 30-145. Denials; public hearing.

In the event an application for a parade permit is denied by the city manager, the applicant may apply to the city council for a hearing concerning the same.

At such hearing the applicant shall have the burden of proof of showing that the proposed parade will not be contrary to the health, welfare, safety and morals of the city. The city manager shall be heard in rebuttal to the granting of the application.

If, after hearing the applicant and the city manager, the city council shall find as a fact that the proposed parade will not be contrary to the health, welfare, safety and morals of the city, the application shall be granted by the city council. Otherwise, the action of the city manager in denying the application shall stand. (Ord. No. 0-29-68, Sec. 13.112, 11-14-68)"

Testifying for the State, Wilson police officer Robert T. Johnston stated that defendant was arrested after he and approximately 100 other persons were observed proceeding *en masse* up a public street in a manner which precluded the passage of vehicular traffic. Evidence tended to show that defendant and his companions traveled approximately seventy-five feet while Officer Johnston was present, that defendant was arrested before the others in the group and that the crowd refused to disperse upon being informed that parading without a permit was not allowed.

As a witness for the State, Bruce J. Boyette, City Manager of Wilson, stated that neither defendant nor any other person applied to him or his office for a permit to parade on 30 November 1972. Boyette also explained that although defendant had previously secured a parade permit for 17 September 1972, he had been denied same on 12 October for a procession on 15 October 1972. The evidence indicated that upon Boyette's refusal to grant the requisite permit, defendant appealed the decision to the city council pursuant to section 30-145 of the ordinance and the appeal was heard on the 13th. The city council agreed with Boyette's determination that as a matter of fact the proposed parade constituted a threat to public safety and to that of the march participants. The city council then informed defendant that a permit would issue for 15 October 1972 regardless of the 72-hour time requirement embodied in section 30-143 above, provided the applicant modified the intended parade route. Boyette stated that after this offer was tendered, no further request from defendant was forthcoming and no parade transpired on that route at that time.

The defendant presented no evidence.

The jury found defendant guilty of the charge of parading without a permit on 30 November 1972. From the imposition of an active prison sentence of thirty days, defendant appealed.

*Attorney General Robert Morgan by E. Thomas Maddox, Jr., Associate Attorney for the State.*

*Paul, Keenan & Rowan by Jerry Paul and James E. Keenan for defendant appellant.*

VAUGHN, Judge.

[1] Defendant contends that the warrant against him should have been quashed for failing to state specifically the nature of the parade in issue. Although the warrant did not expressly identify the definitional section of the pertinent ordinance, it did refer to the ordinance as a whole, a fact which put defendant on notice of the particular meaning of "parade" as that term was used in the warrant. We conclude that the warrant contained terms of "sufficient certainty to apprise the defendant of the specific accusations against him so as to enable him to prepare his defense and to protect him from a subsequent prosecution for the same offense." 4 Strong, N. C. Index 2d. Indictment and Warrant, § 9, p. 348. *See State v. Sparrow,* 276 N.C. 499, 173 S.E. 2d 897. Every criminal proceeding by warrant is sufficient in form for all intents and purposes if it expresses the charge against the defendant in a plain, intelligible and explicit manner. G.S. 15-153. The court properly declined to quash the warrant.

[2] Defendant asserts that the court erred in admitting into evidence a statement made by him after an allegedly illegal arrest. G.S. 15-41(1) provides in relevant part that "a peace officer may without warrant arrest a person (1) When the person to be arrested has committed a . . . misdemeanor in the presence of the officer, or when the officer has reasonable ground to believe that a person to be arrested has committed a . . . misdemeanor in his presence." Officer Johnston observed defendant and approximately 75-100 other individuals proceeding along a public street in a manner which obstructed traffic. It was reasonable for the officer to believe that a misdemeanor was being committed in his presence. We hold, therefore, that defendant's arrest was not illegal. When informed he was under arrest for parading without a permit, defendant immediately volunteered the statement: "How do you know I don't have a permit?" Under these circumstances it was not error to allow the officer to testify that defendant made the statement. With respect to defendant's statement to the effect he wanted to go to jail, we are unable to determine from the record before us

whether it was made in response to a question posed by the interrogating officer or whether it was merely volunteered in a manner which would render *Miranda* inapplicable. We will not presume error and therefore conclude that the statement was properly admitted.

Defendant's most serious contention appears to be that the article of the Wilson City Code under which he was convicted is repugnant to the Constitution of the United States and the Constitution of North Carolina. Defendant maintains that since they lack definite, objective criteria on which to base administrative decisions, those sections impermissibly attenuated the right of freedom of assembly, petition and speech guaranteed by the first amendment to the United States Constitution and by Article I, Section 12 and Article I, Section 14 of the North Carolina Constitution.

[3]   A question exists as to whether defendant may attack the constitutionality of the permit requirement since he made no attempt to secure the requisite permit for the 30 November 1972 parade. In *Lovell v. Griffin*, 303 U.S. 444, 82 L.Ed. 949, where appellant failed to apply for a permit prior to distributing religious literature, the Court asserted that "as the ordinance is void on its face, it is not necessary for appellant to seek a permit under it. She is entitled to contest its validity in answer to the charge against her." 303 U.S. at 452-53, 82 L.Ed. at 954, *citing Smith v. Cahoon*, 283 U.S. 553, 75 L.Ed. 1264. Similarly, in *Staub v. Baxley*, 355 U.S. 313, 2 L.Ed. 2d 302, the Court, rejecting the lower court's view that having made no effort to secure a license before soliciting union memberships, the defendant was estopped from alleging that the licensing law was invalid, observed that "the decisions of this Court have uniformly held that the failure to apply for the license under an ordinance which on its face violates the Constitution does not preclude review of the Court." 355 U.S. at 319, 2 L.Ed. 2d at 309. Numerous other decisions contain similar statements. *E.g.*, *Shuttlesworth v. Birmingham*, 394 U.S. 147, 22 L.Ed. 2d 162; *Cox v. Louisiana*, 379 U.S. 536, 13 L.Ed. 2d 471; *Jones v. Opelika*, 316 U.S. 584, 86 L.Ed. 1691, *dissent adopted on rehearing*, 319 U.S. 103, 87 L.Ed. 1290; *Cox v. New Hampshire*, 312 U.S. 569, 85 L.Ed. 1049; *Thornhill v. Alabama*, 310 U.S. 88, 84 L.Ed. 1093. Because of these cases we have elected to consider the merits of defendant's attack on the ordinance.

[4] Defendant argues that the permit requirement impermissibly abridges his right to free expression. In *Shuttlesworth v. Birmingham, supra,* the Court struck down a local ordinance prohibiting parades or any other public demonstrations "unless a permit therefore has been secured from the commission" and which provided that permits were to be granted "unless in its judgment the public welfare, peace, safety, health, decency, good order, morals or convenience require that it be refused." Although the Court notes that parading does not qualify as pure speech, it also points out that prior decisions "have made it clear that picketing and parading may nonetheless constitute methods of expression entitled to First Amendment protection." While recognizing that streets and parks are traditionally viewed as being held in trust for public use and for purposes of assembly and communication, the Supreme Court has simultaneously acknowledged that reasonable restrictions on the time, place and manner of public parading, demonstrating and picketing are permissible when necessary to further significant governmental interests. *See Shuttlesworth v. Birmingham, supra; Kunz v. New York,* 340 U.S. 290, 95 L.Ed. 280; *Cox v. New Hampshire, supra; Hague v. CIO,* 307 U.S. 496, 83 L.Ed. 1423. Nevertheless, the relevant decisions indicate that where prior restraints, such as a licensing requirement, are imposed on "speech-plus" activity like parading, "narrow, objective and definite standards to guide the licensing authority" must accompany those restraints. 394 U.S. at 151, 22 L.Ed. 2d at 167. *See Staub v. Baxley,* 355 U.S. 313, 2 L.Ed. 2d 302; *Cantwell v. Connecticut,* 310 U.S. 296, 84 L.Ed. 1213. Without definite, meaningful standards which relate to the proper regulation of public places, the risk of arbitrary action which impermissibly impinges upon jealously protected first amendment rights becomes intolerable.

[5] We recognize that it is not impossible to construe the contested provisions of the Wilson code as vesting unfettered discretion in the city manager to reject permit applications on the basis of his own personal and perhaps subjective determination of which parades in fact threaten the health, safety and morals of the city. *Shuttlesworth v. Birmingham, supra; Saia v. New York,* 334 U.S. 558, 92 L.Ed. 1574; *Cox v. New Hampshire, supra; Cantwell v. Connecticut, supra; Lovell v. Griffin, supra.* Such a construction might well place the Wilson ordinance squarely within the purview of *Shuttlesworth v. Birmingham, supra,* and render it incompatible with the first amendment.

We find, however, that another cogent construction of the contested provision presents itself. Adhering to the general rule that where two statutory constructions are possible, the interpretation which will present a finding of unconstitutionality should be adopted, *Randleman v. Hinshaw*, 267 N.C. 136, 147 S.E. 2d 902; *Finance Co. v. Leonard*, 263 N.C. 167, 139 S.E. 2d 356, we hold that when the ordinance is considered in light of its purpose and the legislative intent it fulfills rather than merely on its face, it does not constitute an impermissible prior restraint on freedom of expression.

Because the statutes confer general authority on cities to regulate and control public streets within their corporate limits and because the ordinance in question is entitled "Traffic," it is reasonable to find that the intent of the city council in passing the provisions was to insure that order prevailed on city streets and sidewalks. This view is reinforced by the terms of Article VII. A reading thereof reveals that the purpose of the pertinent provisions is in fact the regulation and control of traffic for the benefit of public conveyance and safety. *Cf. Cox v. New Hampshire, supra.* The Article contains regulations for permissible parade times, the maximum number of processions per day, the selection of routes, the number of parade units and the control of parking. Given the nature of these provisions, it is clear that Article VII is purely regulatory. The dictionary defines "regulate" to mean "3, to fix or adjust the time, amount, degree, or rate of." Webster's Third New International Dictionary (1967). This is precisely what the Wilson ordinance attempts to do. In view of our interpretation of legislative intent outlined above, we construe the boiler plate "health, safety, welfare, and morals" language of the ordinance to mean that the city manager and city council may only deny a permit when the proposed parade, due to the time for which it is scheduled, its intended route, or the proposed manner of execution, irreconcilably conflicts with public safety and convenience. *See Shuttlesworth v. Birmingham, supra; Cox v. New Hampshire, supra.* Moreover, in our view the ordinance requires that in passing on the above considerations, a systematic, consistent and just procedure be adopted by city officials to insure that administrative action is free from improper or inappropriate consideration. *Cf. Shuttlesworth v. Birmingham, supra.* For these reasons, we conclude that the Wilson ordinance, as we have construed it, is a reasonable regulatory provision which does not constitute an unconstitutional prior restraint on first amendment rights.

State v. Frinks

[6] We are cognizant of the fact that section 30-151 renders it "unlawful of anyone riding in a parade to distribute from the vehicle upon which he is riding any handbills, advertising matter, candy, cigarettes, prizes or favors of any kind." Although there is some indication in *Cox v. New Hampshire, supra,* that such a provision may be unconstitutional, we need not pass on its validity since defendant was not charged thereunder. Moreover, the section is severable from the rest of the ordinance and would thus not destroy the validity of other provisions thereof or have any bearing on defendant's conviction for parading without a permit. *Hobbs v. Moore County,* 267 N.C. 665, 149 S.E. 2d 1.

In *Shuttlesworth v. Birmingham, supra,* the Supreme Court rejected a state court construction not dissimilar from that which we espouse regarding the Wilson ordinance. In *Shuttlesworth,* however, the Court noted that in fact administrative officials had actually acted in a manner inconsistent with the state court's construction. In the instant case, the record lacks evidence of any arbitrary or inconsistent action by the city manager or the city council in determining when permits will issue. Defendant was granted a permit for a parade on 17 September 1972. Although he was denied a permit for 15 October 1972, the council gave defendant the option of modifying the parade route and agreed to reconsider the denial and waive the 72-hour notice if such was done. We perceive this to be the antithesis of arbitrary, inflexible and unreasonable action. With respect to the 30 November 1972 parade, defendant did not apply for a permit, and the record gives no indication that such would have been denied had application been made. This case and *Shuttlesworth* are thus distinguishable on their facts, and the outcome of the latter does not require the same result here.

Defendant brings forward numerous other challenges to the validity of the ordinance and his trial which we have considered. We conclude that defendant has failed to show any defect that is prejudicial to him.

No error.

Chief Judge BROCK and Judge HEDRICK concur.